```
                    UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - x

JOHN DOE                         :  No. 3:09-CV-1071 (WWE)
                                 :  915 Lafayette Boulevard
            vs.                  :  Bridgeport, Connecticut
                                 :
                                 :  September 22, 2011
UNIVERSITY OF HARTFORD           :

- - - - - - - - - - - - - - - - x
```

                          MOTION HEARING


B E F O R E:

    THE HONORABLE HOLLY B. FITZSIMMONS, U. S. M. J.


A P P E A R A N C E S:


    FOR THE PLAINTIFF:

        BARBARA E. GARDNER, ESQ.
            843 Main Street, Suite 1-4
            Manchester, Connecticut  06040

    FOR THE DEFENDANT:

        OFFICE OF THE ATTORNEY GENERAL
            55 Elm Street
            Hartford, Connecticut 06106-1774
        BY:  NANCY A. BROUILLET, AAG


                    Susan E. Catucci, RMR
                    Official Court Reporter
                    915 Lafayette Boulevard
                Bridgeport, Connecticut  06604
                     Tel: (917)703-0761

```
1                    (2:55 O'CLOCK, P. M.)

2              THE COURT:  Good afternoon.  This is Civil Case

3    Number 09CV-1071, John Doe v. the University of

4    Connecticut.  And it's a matter assigned to Judge Eginton.

5    We're here today for an argument on the pending motion for

6    protective order, which I think is the plaintiff's motion.

7    Right, Ms. Gardner?

8              MS. GARDNER:  Yes, Your Honor.

9              THE COURT:  All right.  I'll be happy to hear

10   you.

11             MS. GARDNER:  Okay.  Your Honor, following the

12   plaintiff's deposition in this matter, and I'll assume

13   that you're familiar with the facts, I won't go into too

14   much of that, but please feel free to ask me any questions

15   because it is somewhat complex -- but following the

16   plaintiff's deposition, in fact the day after,

17   Ms. Brouillet issued a subpoena to take the deposition of

18   the plaintiff's probation officer and there were some

19   discussions, but ultimately I felt it necessary to move

20   for a protective order because my understanding of the

21   defendant's stated purpose in seeking this deposition is

22   to authenticate documents from the plaintiff's sexual

23   offender treatment, which we've agreed to authenticate

24   without the necessity of the deposition and to discover

25   facts.
```

1          This is the second stated purpose, to discover

2     facts regarding the allegation of plaintiff's complaint

3     that the criminal charges against him were false in the

4     underlying case from which that sexual offender treatment

5     arose.

6          So, a couple of things.  Ms. Brouillet and I

7     have been talking, still trying to work this out, and my

8     understanding is that the proposed compromise and, again,

9     I'm not sure this is still on the table, but Ms. Brouillet

10    at some point agreed not to take the deposition if we

11    would authenticate the records and she could give a copy

12    of plaintiff's deposition to his probation officer.  I

13    simply ask that she not do that right away.

14         Her stated reason for wanting to do it at all

15    was to possibly use the probation officer as a witness, so

16    I asked that this be done sometime closer to trial in her

17    preparation for any potential testimony.

18         And this case is filed under seal.  There's a

19    confidentiality order in place.  But in reviewing the

20    confidentiality order, a potential witness can be given

21    copies of documents and told that they are confidential,

22    et cetera.

23         So, the concern I have is with Ms. Brouillet's

24    motive.  I mean no disrespect but she was very aggressive

25    at the deposition of the plaintiff.  I understand this is

 1    a very serious issue that's been raised in this case.

 2    It's very serious for my client as well.  And I feel that

 3    by seeking to take a deposition of the probation officer,

 4    Ms. Brouillet is trying to intimidate my client into

 5    withdrawing his claim.

 6              On that note, I will say after much

 7    consideration, I did today offer, and I still offer, to

 8    delete paragraph 17 from my complaint so that I am not

 9    going to pursue this alleged false charge against my

10    client as a basis for retaliation.  I have other bases for

11    retaliation in the complaint but I do not want this to

12    become what the case is about.  It's certainly not what

13    the case is about in my view.  It was a part of the case,

14    you know, what I considered to be a really horrific part

15    of the case, but I have told Ms. Brouillet that I'm

16    willing to delete paragraph 17 if I'm permitted to do so.

17    I understand she may still want to pursue that and we're

18    not backing away from the truth of paragraph 17.  We're

19    simply not pursuing it as part of this case.

20              So, having said all that, I'll just close with

21    saying that we are willing to authenticate any documents

22    that the probation officer produces in response to the

23    subpoena.  In other words, I would like this to be taken

24    in steps, and then if, after seeing those documents,

25    defense counsel then wants to still depose the probation

1    officer -- well, number one, I would like her to

2    articulate the purpose, given the fact we are now

3    withdrawing paragraph 17, and that there be some limits on

4    the disclosure of plaintiff's testimony in the case.  I

5    don't understand why that would have to be disclosed to

6    the, the probation officer because it may have a very

7    serious effect with regard to the criminal matter.

8              THE COURT:  Thank you.  Ms. Brouillet?

9              MS. BROUILLET:  Thank you, Your Honor.  I also

10   want to point out that I believe the defendant's motion

11   for sanctions in regard to defending the motion for

12   protective order is before the court.  Attorney Gardner

13   and I have been talking about trying to reach an

14   agreement, and the more information I obtain from the

15   plaintiff, the more I want to depose the probation

16   officer, Your Honor.

17        The stated purpose for this motion for

18   protective order, which was filed after the first day of

19   deposition -- and there was no objection to the testimony

20   at the time of the deposition, plaintiff was not

21   instructed to take the Fifth Amendment against

22   self-incrimination -- the stated purpose, which I don't

23   believe is a proper purpose, is so as not to pose a threat

24   to the plaintiff such that the disclosure of the facts of

25   the civil case which are under seal would subject him to

1    criminal prosecution for violation of probation, and

2    that's Document 44-1 at page one.

3          Your Honor, the plaintiff put in issue the

4    relationship he had with his supervisor at UConn, that we

5    refer to by the pseudonym of John Smith.  The plaintiff

6    has pled guilty under the Alford Doctrine to molesting his

7    supervisor's nine-year-old daughter, Mary Smith, in 1999

8    through 2000.  The plaintiff is alleging that he was then

9    sexually harassed by his supervisor.  So, while I welcome

10   the withdrawal of that paragraph of the complaint, that

11   doesn't mean that it's not part of this case.

12         The problem that I have, Your Honor, is when I'm

13   taking the plaintiff's deposition, he tells me certain

14   things, which include "Those records you have before you,

15   I've never seen," and, "They are concocted, they are cut

16   and pasted.  Either the Attorney General's Office has done

17   it or the University of Connecticut's done it."

18         So there's now a cloud over this case because we

19   have the plaintiff saying that --

20         THE COURT:  What kind of documents are we

21   talking about?

22         MS. BROUILLET:  They are documents from the

23   Adult Probation Office's Center for Treatment of Problem

24   Sexual Behaviors, where the plaintiff apparently is

25   required to go to the adult probation office at least on a

1    weekly basis as part of a group and discuss what is

2    happening in his life and talk about his crimes and

3    articulate that.  And the records I have discuss a lot

4    about what has happened with the supervisor, his feelings

5    toward his supervisor and the child.

6         I have not seen -- as soon as Attorney Gardner

7    filed the motion for protective order, I simply called the

8    adult probation officer and said we're going to wait for a

9    ruling from the court.  Your deposition is canceled.

10   Don't send anything and I can't talk to you about it.

11        But we have three protective orders in place

12   and, as Attorney Gardner noted, these are records that, if

13   shown the adult probation officer, cannot be used in any

14   way.  They are for the purpose of asking questions.  I do

15   not even know, Your Honor, if I'm going to ask her

16   anything about precise statements made in the plaintiff's

17   deposition but I want to be able to do so.

18        And now I understand that the plaintiff has made

19   statements to the probation officer about this lawsuit and

20   the allegations of this lawsuit.  The adult probation

21   officer, according to the plaintiff's own testimony, knows

22   about this lawsuit because, first of all, he had a panic

23   attack there right around the time I first took his

24   deposition on June 29th and had to go to the emergency

25   room.

1          Second of all, when he came back for the second

2     day of his deposition on July 13th, 2011, this motion for

3     protective order had been filed, so I asked him about it

4     and I asked him, what's the purpose?  And he said

5     essentially, "I may have admitted to a crime in my

6     deposition and I don't want the probation officer to find

7     out."  That means that the crime's already been committed,

8     Your Honor.  I am just trying to find out what information

9     has been told.

10         Now, I fully respect Attorney Gardner's

11    willingness to stipulate to the authenticity of the

12    records.  That does not cure the issue of the statements

13    made in those records.  I want to be able to ask the adult

14    probation officer not just whether your records are

15    authentic, but now I have to ask about the statements.

16         And I don't expect that we'd be going there

17    until the deposition.  I did requests for admissions, I

18    did interrogatories and production requests.  I had -- a

19    lot of plaintiff's testimony surprised me.  So, backing

20    away from his prior statements, backing away from the

21    criminal proceedings in Superior Court where he did plead

22    guilty under the Alford Doctrine and responded to the

23    Superior Court Judge's questions, I didn't think there was

24    going to be an issue on that part of it.

25         I want to see what the plaintiff said because,

1    quite frankly, it not only goes to his credibility, I may

2    be arguing to the jury his true motivation for bringing

3    this lawsuit in 2009 is because not only did he lose his

4    job at UConn, which is not what he's not suing for,

5    because he couldn't do the essential functions of his job,

6    but he was arrested in March of 2009 for violation of

7    probation.

8              This lawsuit comes about in July of 2009.  This

9    gentleman has been represented all along by counsel.

10   We've been able to enter into stipulated orders.  I just

11   want to be able to ask a witness, a fact witness, what

12   statements the plaintiff made.  He put this at issue.

13             THE COURT:  So, what you want to ask the

14   probation officer in these depositions is what statements

15   the plaintiff has already made to her or him?

16             MS. BROUILLET:  Yes.  And I don't know if -- in

17   asking those questions, I might say, well, I want to

18   review a portion of what the plaintiff said in his

19   deposition; is this what he told you?  I don't know, Your

20   Honor.  But I don't want to agree in advance that I'm

21   prohibited from using his testimony under oath, which is

22   supposed to be truthful, in asking questions of another

23   witness.

24             And I just think as a matter of public policy,

25   it's wrong to ask a court to hide from another judicial

1    system a potential crime.  To say in the motion -- the

2    motion doesn't say it's intended to intimidate and harass

3    the plaintiff.  It says it's to prevent disclosure of the

4    facts in a civil case to the adult probation officer.

5    That's what the motion says.  I don't think that's a

6    proper purpose and it's against public policy to grant the

7    motion for protective order on those grounds, Your Honor.

8    So --

9              THE COURT:  Well, just to make sure that I

10   understand --

11             MS. BROUILLET:  Yes.

12             THE COURT:  -- your position, I don't see how

13   the plaintiff could be harmed -- although Ms. Gardner may

14   enlighten me in a minute -- by any questioning of the

15   probation officer about statements that the probation

16   officer has recorded that the plaintiff made to -- it's a

17   her or a him?

18             MS. BROUILLET:  The probation officer?  Yes, the

19   probation officer is a woman, yes.

20             THE COURT:  To her.

21             MS. BROUILLET:  Yes.

22             THE COURT:  But are you proposing or wanting to

23   reserve the right to ask the probation officer about

24   statements that Mr. -- that the plaintiff doesn't allege

25   he made to the probation officer?  That is, would you be

1       saying to the probation officer or want the right to say

2       to the probation officer, well, in the course of your

3       supervision of the plaintiff, did he admit to you that he

4       did X Y Z, things that are not reflected in any of the

5       records that you've received from adult probation?

6              MS. BROUILLET:  Yes, Your Honor.  I wish to be

7       able to take, if necessary, the plaintiff's deposition

8       testimony under oath and be able to say to the probation

9       officer, what did he tell you about this.  I don't know

10      that I'm ever going to do that, but I certainly wish to

11      reserve the right to do that as part of the discovery in

12      this case.

13             THE COURT:  But if this is not the lawsuit, but

14      activity or actions that the plaintiff engaged in perhaps

15      while under supervision but were not shared with the

16      probation officer, what would be the relevance of asking

17      the probation officer if he told her about X Y Z?

18             MS. BROUILLET:  My statements were based upon

19      this -- and this is the scenario that I envision from my

20      discussions with Attorney Gardner -- I thought the concern

21      was that the plaintiff did not want the probation

22      officer -- I do not know of anything that might be a

23      potential crime unless the plaintiff lied under oath, but

24      I believed that the plaintiff did not want to disclose

25      that he denied that he ever touched the nine-year-old in

1      his deposition.  That is what I thought the plaintiff

2      wanted to prevent from getting out there, that he denied

3      that he ever touched or molested a nine-year-old child,

4      even though he's on probation for that and pled guilty to

5      that.  That was my understanding of the main concern.

6              THE COURT:  That was my understanding of the

7      concern, too.

8              MS. BROUILLET:  Okay.

9              THE COURT:  So, what -- in terms of that

10     particular fact or assertion --

11             MS. BROUILLET:  Yes.

12             THE COURT:  -- why would it matter whether he

13     told that to the probation officer or not, if there were

14     already admissions in the documents that you have from

15     probation to the contrary, that he had in fact touched the

16     child?

17             MS. BROUILLET:  Because the plaintiff has

18     repeatedly changed his story.  I have request for

19     admissions that respond affirmatively.  I have testimony

20     at the beginning of his deposition that he had done it.

21     Then I have testimony saying, no, I've been falsely

22     accused.  I have his complaint saying I've been falsely

23     accused and this was concocted.  And then the plaintiff

24     only not only claimed the father, the supervisor, he also

25     said that the child lied to the police.

1         So, to the extent that this is part of the case,

2    because this interrelationship is all interwoven, then I

3    want to be able, if necessary, to ask the probation

4    officer about it because the plaintiff put it in there.

5    So, even if they withdraw it from the complaint,

6    potentially this is going to become an issue at the time

7    of trial because it's going to the credibility -- the

8    multiple stories plaintiff has told, and I want to be able

9    to ask, if necessary, the probation officer about that.

10        THE COURT:  But, presumably, what the plaintiff

11   is concerned about is that somehow the probation officer

12   not be told or not know now that the plaintiff is saying I

13   didn't really commit this crime.  When you cross examine

14   the plaintiff about whether he has admitted committing the

15   crime to his probation officer, he's going to say yes,

16   consistent with these statements, and if you ask him did

17   you ever tell the probation officer that you didn't commit

18   this crime, he's going to say no, right?

19        MS. BROUILLET:  I don't know what the

20   plaintiff's going to say, Your Honor, because he keeps

21   changing.  That's the problem.  The plaintiff has said

22   yes, I did it, then said no, I didn't do it.  I believe

23   his violation of probation charge, which was found guilty

24   in December of '09, was based upon him refusing to admit

25   it after they did a polygraph that he had touched the

1    child and he had said in these records that I already

2    have, "Even though I admitted it before, I'm now denying

3    it."

4              THE COURT:  He said that in the records you have

5    from probation?

6              MS. BROUILLET:  Yes, Your Honor.  When I say

7    probation, I'm referring to the subset of the Center for

8    Treatment of Problems with Sexual Behavior so yes, I have

9    that.

10             MS. GARDNER:  I don't agree with that.  I don't

11   believe he's been inconsistent.  The only time -- the

12   problem is -- excuse me, Your Honor, for jumping in -- is

13   just as you described it.  Under oath in the deposition in

14   his civil case, he told the truth and said he didn't do

15   it.  In the criminal case he pled guilty under the Alford

16   Doctrine, which is not saying he did it but that the state

17   had enough evidence to convict him and he didn't want to

18   risk going to trial.  He has to admit in his therapy that

19   he did it or it's a violation of probation, which is

20   exactly why he was charged with a violation of probation,

21   because he could not bring himself to admit it.  He now is

22   in a position of having to admit it in treatment, but in

23   this case he was under oath and he told the truth.

24             I think Your Honor hit the nail on the head, why

25   should his probation officer have to be told that?  It's

1    cumulative.  The plaintiff is admitting the discrepancy.

2    He has not changed his story.  Yes, in the beginning of

3    his deposition when he first had these records put in

4    front of him -- and, again, Ms. Brouillet was extremely

5    aggressive -- he was nervous and panicky and he said, "I

6    don't know what that is, maybe you made it up."  We hadn't

7    seen them ahead of the deposition.

8            But his story has been consistent, so I just

9    want to make that clear.

10           MS. BROUILLET:  Your Honor, let me be clear --

11   and perhaps Attorney Gardner hasn't reviewed this part of

12   the record.  The plaintiff denied at one point that he

13   committed the offense to the adult probation office.  They

14   had him undergo a polygraph test, confronted him with the

15   results and, according to their records, the statement he

16   then made -- and this is what led to the arrest warrant

17   affidavit from his prior probation officer, Jose Torres,

18   was now, "After being confronted with the polygraph result

19   that he was deceptive, plaintiff now admitted that he

20   repeatedly touched the vagina of the nine-year-old but it

21   was accidental."

22           So, Attorney Gardner is right, at the beginning

23   of the deposition he says yes, I admit it.  Then he goes

24   and denies it, and then he says, "I say whatever I have to

25   to protect my family."

1          I will object to what Ms. Gardner has said, to

2     the characterization of my question as aggressive because

3     there was no objection at the time of the deposition.  No

4     one called the court.  No one sought anything from the

5     court.  It was very frustrating because the plaintiff at

6     one point told me he would not answer questions, so I

7     advised him if he did not answer questions we would seek

8     the court to order him to answer questions.

9          Clearly the plaintiff is uncomfortable

10    responding to questions about what he did but,

11    nonetheless, Your Honor, I think we get to know this.  I

12    don't understand why we don't potentially get to say to

13    the probation officer, this is what he testified to under

14    oath because one presumes the plaintiff was truthful.

15    Yet, in his deposition, I did it, I didn't do it, and then

16    I admitted because I had to.  So even in his own

17    deposition he's completely inconsistent.

18          THE COURT:  Yes, but what I'm having a hard time

19    understanding is if that's so, if he's inconsistent in his

20    deposition and he's inconsistent between his deposition

21    and the written documentation that you have with

22    probation, what does it get you to ask this question of

23    the probation officer aside from what's in the

24    documentation?

25          MS. BROUILLET:  I don't know what the probation

1    officer has because I haven't viewed the documentation,

2    but I wanted the flexibility, Your Honor, because as soon

3    as the protective order was filed, I didn't want to go any

4    further.  I don't know what's contained in this.  I

5    frankly have never had a plaintiff who's been on probation

6    and had to face this so I didn't know a lot about the

7    situation.

8            I do want to be able to authenticate the

9    statements in the probation office records, not just that

10   they are authentic documents but the statements that were

11   made and I did not want my hands tied in advance.  I

12   wanted to reserve the right to ask questions about the

13   statements made by the plaintiff under oath in the

14   deposition to the extent I want to use that later at trial

15   to impeach him or what may occur.

16           That probation officer has already been notified

17   there's a protective order in this case, so I'm a little

18   unclear what the concern is.  If the concern is that the

19   plaintiff doesn't want his probation officer to know that

20   he's now in another court denying that he committed these

21   acts -- I gather that's what this is about.

22           THE COURT:  Is that the concern, Ms. Gardner?

23           MS. GARDNER:  Frankly, yes, but I don't want it

24   viewed in the way that Ms. Brouillet is suggesting it.

25   Why -- what is her motive in wanting the probation officer

1    to know that other than a bad one?  In this case he's

2    under oath, he tells the truth.  In his therapy, he has to

3    admit that he did it or he's violating his probation.  I

4    mean it's a classic Catch-22 and I don't understand,

5    because this case is under seal, the deposition is a

6    confidential document, why should the probation officer --

7    why should this be disclosed to her?  I don't understand

8    the reason.

9             If it's to authenticate documents, you know, she

10   can do that without knowing what the plaintiff said.  I

11   mean I can just hear Ms. Brouillet's first question:  Are

12   you aware that the plaintiff in his civil case has stated

13   under oath that he did not touch the victim?  That's what

14   I'm afraid of.  I just don't -- I don't see how that's

15   really, you know, relevant to the defense in this case,

16   particularly if we withdraw the paragraph 17.

17            THE COURT:  Let me ask you this.  Have you seen

18   these probation documents?

19            MS. GARDNER:  No.

20            THE COURT:  And presumably you don't have a

21   problem with Ms. Brouillet seeing them under the

22   protective order?

23            MS. GARDNER:  No.

24            THE COURT:  Okay.  How about this.  How about if

25   we all look at these documents and see what's in them and

1    whether this is actually a problem that's going to arise

2    at the deposition or not.  Because it's starting to sound

3    to me as though we may be arguing about something that may

4    turn out not to be an issue.

5              I mean if he has said both things in his -- over

6    the period of his probation, no, I didn't touch her, yes,

7    I did touch her, then the inconsistencies to the probation

8    officer are consistent with the inconsistencies that

9    Ms. Brouillet sees in the deposition and it's not -- and

10   there's not going to be any reason for the probation

11   officer to care what he said in his deposition because

12   it's not -- because it's consistent with what he's been

13   saying all along which is two different things, according

14   to Ms. Brouillet.

15             MS. GARDNER:  Yes.

16             THE COURT:  If, on the other hand, everything in

17   the records is an admission of culpability, contrary to

18   the Alford plea, and there's -- and the probation officer

19   writes down pretty much what gets said -- I take it those

20   are her, the probation officer's records?

21             MS. BROUILLET:  They are the adult probation

22   officer's records, Your Honor.

23             THE COURT:  At that point certainly

24   Ms. Brouillet has her inconsistent statement to impeach

25   with at trial and the use of the probation officer to do

1    that impeachment is not -- is neither necessary nor

2    appropriate because you've got the impeachment.

3    Presumably, presumably the probation officer's going to

4    say everything I wrote down here you told me.  I mean I

5    don't think there's any problem with asking that question,

6    did you accurately record what the plaintiff said and was

7    there something else that you didn't write down?  I don't

8    think there's anything wrong with those kind of questions.

9         You know, to open a deposition in the way that

10   Ms. Gardner suggests when there's no support for any of it

11   in the documentation, you know, that's probably an

12   objectionable question.  That's a different issue.  But,

13   you know, I think, Ms. Brouillet, you're going to be in a

14   much better position to know what specifically you're

15   going to want to do that would violate Ms. Gardner's

16   proposed protective order if you can look at these

17   documents, and I'm going to be in a much better position

18   to rule if I can read the deposition of the plaintiff and

19   look at these documents.

20        So, if it's all right with the two of you, I'm

21   going to suggest that the documents be produced to

22   Ms. Brouillet under a protective order with a copy to you,

23   Ms. Gardner, and copy to me, and then once you've had a

24   chance to look at them and think about what you want to

25   do, Ms. Brouillet -- and we can talk about this again.  We

1   can do it on the phone.  You don't need to come all the

2   way to Bridgeport again to do that.  And if there are some

3   gray areas, then I'll just make sure that I'm available

4   when you take the deposition, and if there's an

5   objectionable question that's asked, you can just call me

6   and I'll rule then on the record based on the actual

7   question that's asked and we can take it from there.

8          MS. BROUILLET:  Your Honor, I'd also like to

9   potentially at the deposition show the probation officer

10  the complaint that was filed in this matter.

11         THE COURT:  And why is that?

12         MS. BROUILLET:  Because I may want to ask her

13  questions about anything she might know about the

14  complaint, show her the proof and ask her what were you

15  told about this so I can just challenge any statements the

16  plaintiff made about the complaint, even if I don't show

17  her his deposition testimony about the complaint.

18         MS. GARDNER:  And I would object, Your Honor,

19  because the complaint is under seal.  And, again, I don't

20  understand why that would be necessary other than to

21  intimidate the plaintiff.

22         MS. BROUILLET:  Well, not the complaint, Your

23  Honor, the CHRO affidavit by the plaintiff, which is

24  potentially not under seal, was never sealed, and before

25  he was represented by Attorney Gardner, the agency had an

1    answer because that essentially mirrors the complaint.

2    And that was marked as an exhibit at the plaintiff's

3    deposition.

4        THE COURT:  All right, and are you thinking --

5    again, you haven't seen what's in these records --

6        MS. BROUILLET:  Right.

7        THE COURT:  -- Ms. Brouillet, but are you

8    contemplating asking about topics that are not mentioned

9    in the probation records?

10       MS. BROUILLET:  I'm going to ask -- well, let me

11   back up, Your Honor.  I have been told by someone who's a

12   retired probation officer that, in general, they are

13   supposed to write a lot of things down but sometimes they

14   don't, so there may be a person who has an independent

15   recollection.  So if it's not in the records, I'm

16   certainly going to inquire what other recollection the

17   person has, you know, about other events, because in this

18   case the plaintiff is claiming emotional distress.

19       His only damages claim is severe emotional

20   distress, and he went on at length in his deposition about

21   all that he has suffered as a result of being a convicted

22   sex offender, because he feels wrongly convicted, that he

23   can't get a job, that he can't attend his children's

24   school and all these different things.

25       And most of his -- he's not blaming the

1  university, who's the only defendant.  He didn't sue the

2  individual supervisor.  The claims that he made against

3  the university, he even attributed to the university the

4  fact he's a convicted sex offender.

5          So it makes it very difficult to understand,

6  when the plaintiff groups everything together, what's

7  being claimed.  I certainly would welcome the withdrawal

8  of that paragraph of the complaint because it takes it out

9  of the equation.  I don't have to address it in

10  dispositive motion.

11          THE COURT:  That is 17?

12          MS. BROUILLET:  Yes.

13          MS. GARDNER:  Yes.

14          THE COURT:  So that's going to be withdrawn,

15  Ms. Gardner?

16          MS. GARDNER:  Yes.

17          THE COURT:  Okay.

18          MS. BROUILLET:  So that makes things a lot

19  simpler obviously, but I guess I'm a little unclear

20  because I have such an amorphous response from the

21  plaintiff, now that I understood at his deposition -- in

22  interrogatory responses he claimed that he did have lost

23  wages, he clarified that in his deposition.  There's no

24  lost wages being sought.

25          THE COURT:  Okay.

1          MS. BROUILLET:  But there is also a plaintiff

2     who's even more involved.  This is a plaintiff who owned

3     real estate with his supervisor through the period up

4     until July of 2006.  He also had an interrelationship with

5     the community with his supervisor, and there's so many

6     issues that are related to whatever the relationship with

7     his supervisor was, supervisor denies anything improper

8     happened, which is not the university's problem or focus.

9     We're only focused on the university because that's the

10     only defendant.  But there's no lawsuit against the

11     individual so we're trying to find out as much information

12     as we can, and we have reason to believe that the

13     supervisor is either out of state or out of the country.

14     He left UConn by 2007, well before the plaintiff ended up

15     leaving.

16          MS. GARDNER:  As a result of being asked to

17     resign after the investigation found that what the

18     plaintiff was saying was true.

19          MS. BROUILLET:  I'm not going to agree to that

20     statement.  I will tell you that he hotly contested

21     everything, sought a hearing, challenged the findings of

22     the investigation because the witnesses weren't

23     questioned, hired an attorney in addition to the union and

24     has only represented that his daughter was so sickened by

25     all of this he had to take her out of the country.

```
 1            THE COURT:  Okay, well, let's take this one step
 2    at a time, or maybe two steps at a time.  Let's look at
 3    the documents.  Let me read the deposition, which would be
 4    very helpful.  Let me also look at the CHRO affidavit, if
 5    you have that, so that I can -- and read the complaint
 6    carefully, so that I make sure that I'm aware of all of
 7    the ins and outs.  I obviously understand, you know, some
 8    of the complications of this matter but I want to make
 9    sure that I don't miss anything, and then we'll talk
10    again.
11            MS. BROUILLET:  Your Honor, I have the, all of
12    the exhibits, if you want.  I have all of the exhibits
13    from the deposition and the depositions, we received them
14    electronically, too, if you would like them that way.
15            THE COURT:  That would be fine.
16            MS. BROUILLET:  I will send that to you and
17    Attorney Gardner so she could get everything at the same
18    time.  I may have to send it in two batches.
19            THE COURT:  That's fine.
20            THE CLERK:  I'll give you the email address.
21            MS. BROUILLET:  You want both days then?
22            THE COURT:  Yes, please.
23            MS. BROUILLET:  Okay.
24            THE COURT:  Have you set a date for the -- have
25    you scheduled the deposition with the probation officer?
```

1          MS. BROUILLET:  No, we were waiting to hear from

2     you and we agreed if you said it could go forward we would

3     pick a mutually agreeable date.

4          THE COURT:  Okay, good.  And how are you doing

5     with respect to your schedule?

6          MS. BROUILLET:  Discovery closed July 15 and you

7     held in abeyance the deadline for the dispositive motions

8     until we made a decision on this.

9          THE COURT:  Okay, good.  Thank you.  So, as soon

10    as possible so that we not delay the forward motion of

11    this case.

12         MS. BROUILLET:  I just want to tell Your Honor,

13    I have a jury trial beginning in state court.  Joint trial

14    management conference is October 7th and that's going to

15    last potentially, well, depending on the ruling of the

16    motions in limine, at least until the end of October, so

17    once I get the records, I will endeavor to review them as

18    quickly as possible but you may be a little delayed.

19         THE COURT:  Okay.  And do you know whether the

20    probation folks have them gathered already or are they

21    going to have to take some time --

22         MS. BROUILLET:  I think they have them gathered

23    because, not being experienced in this regard, I received

24    a phone recall from the attorney for the judicial branch

25    who said I was requesting -- my request for documents was

```
 1    so overly broad, some things I couldn't have, and my
 2    response was, well, if legally I can't have them, I'm
 3    ignorant, if you just give me what I legally can have.
 4    And he said when we're ready to do so, I'll tell you when
 5    we're ready to do so.
 6              So, it would be my plan to, once I obtain those
 7    documents I can physically pick them up, I will scan them
 8    and send them that day to Attorney Gardner so she can look
 9    at them, too, and we'll all have the same group of
10    records.
11              THE COURT:  Okay.
12              MS. BROUILLET:  When I say the probation
13    officer, I also mean the officer before this current one,
14    during the entire time of his probation, because
15    Ms. McCann (ph) took over Mr. Torres, so I just want to
16    make clear when I say probation officer, whoever the
17    officer was assigned to this gentleman, Mr. Doe.
18              THE COURT:  Okay.
19              MS. BROUILLET:  And I'm presuming through the
20    court that I can extend a completely unredacted deposition
21    to you, Your Honor?
22              THE COURT:  Yes, please.
23              MS. BROUILLET:  Thank you.
24              THE COURT:  That would be helpful.  Have you all
25    talked at all about whether any of the -- whether it would
```

1    be possible to make public a redacted version of the

2    complaint, so that the whole file wouldn't have to be

3    sealed permanently?

4         MS. BROUILLET:  I don't see why it -- I don't

5    think it would be a problem as long as now we have a

6    second order where we have John Doe for the plaintiff and

7    then the names of the supervisor and the child are used as

8    pseudonyms, so I should think that it could be refiled

9    that way.  Do you think, Ms. Gardner --

10        MS. GARDNER:  I have no problem with that.

11        THE COURT:  Good.  Why don't you work on a, you

12   know, a redacted version that's acceptable to both of you

13   and then send it to me because I think, I mean I think it

14   would make life a whole lot easier if there were a

15   complaint that wasn't totally sealed up that we could

16   refer to.

17        MS. BROUILLET:  So we should file with you a

18   sealed version -- a version that's redacted and an

19   unredacted version?

20        THE COURT:  Yes.

21        MS. BROUILLET:  Okay.

22        THE COURT:  Or send me a redacted and unredacted

23   version and then I can order by agreement that the, that

24   the file be unsealed to the extent that the redacted

25   version of the complaint is a public document.

1          MS. BROUILLET:  Good.

2          THE COURT:  Okay?

3          MS. BROUILLET:  And we have no objection to the

4    amendment of the complaint to withdraw paragraph 17 so

5    maybe we can do it as part of the amended complaint so it

6    won't be an issue.

7          THE COURT:  That would be good.

8          MS. BROUILLET:  Thank you, Your Honor.

9          THE COURT:  Thank you all very much.  We'll be

10   in recess.

11          (Whereupon the above matter was adjourned at 3:30

12   o'clock, p. m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

I, Susan E. Catucci, RMR, Official Court Reporter for the United States District Court for the District of Connecticut, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.

/S/ Susan E. Catucci
_____

Susan E. Catucci, RMR
Official Court Reporter
915 Lafayette Boulevard
Bridgeport, Connecticut  06604
Tel: (917) 703-0761