```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

JOHN DOE                         :
                                 :
                                 :
V.                               :    CIV. NO. 3:09cv1071 (WWE)
                                 :
UNIVERSITY OF CONNECTICUT        :
                                 :
```

RULING ON PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

Plaintiff John Doe moves for a protective order to preclude defendant University of Connecticut from taking the deposition of Katherine McKeon, plaintiff's probation officer. **[Doc. #44]**. Upon careful consideration, the plaintiff's motion for protective order **[Doc. #44]** is **GRANTED IN PART AND DENIED IN PART**.

Background

Plaintiff alleges this action that the University of Connecticut, Doe's former employer, violated his rights under Title VII.

This civil case is the culmination of a series of highly troubling events between John Doe and his former friend and supervisor John Smith. Plaintiff and Smith knew have known other since 1986. With Smith's assistance, plaintiff, born in Afghanistan and a freedom fighter against the Soviet Union, was granted political asylum in 1986. In 1998, plaintiff began working at the University of Connecticut as a part time Special Payroll Administrator, and in 2002 plaintiff became a full time program aide under the immediate

supervision of John Smith. Plaintiff and Smith lived in the same multi-family home with their respective families. In May 2006, Smith accused Doe of assault and Doe was arrested and suspended from employment at UConn. In June 2006, Doe filed an internal complaint against Smith, alleging that Smith subjected him to sexual harassment from 2002-2006.  In July 2006, Smith filed criminal charges against Doe, alleging that Doe had sexually molested Smith's minor daughter. In 2008, Smith's employment was terminated as a result of UConn's internal investigation of plaintiff's allegations of harassment.

Doe was charged with sexually molesting Smith's minor daughter. On January 18, 2008, plaintiff pleaded guilty, under the Alford doctrine, to risk of injury to a child in violation of Connecticut General Statutes § 53-21(a)(2), a class C felony, and was sentenced by the Honorable Antonio C. Robaina to 7 years in jail, which execution was suspended, and 10 years probation. At the time of sentencing, a condition of probation was that plaintiff undergo sexual offender evaluation and treatment.  Judge Robaina specifically explained to plaintiff that, "Part of the [sexual offender] treatment may require you to admit outside of the context of the Alford Doctrine the behavior that the allegations here state that you engaged in." [Sentencing Transcript p. 9]. Judge Robaina further canvassed the plaintiff, inquiring, "And you understand that if you don't comply with that treatment, it can give rise to a violation of your probation. Do you understand that, sir?", to which plaintiff responded, "yes". [Sentencing Transcript p. 9].

Since plaintiff's guilty plea, records reveal that plaintiff has undergone and participated in the requisite sexual offender treatment, struggling at times with admitting to certain conduct that gave rise to the criminal charges. On December 2, 2009, plaintiff pleaded guilty to a violation of probation. The record is unclear what conduct led to the probation violation.

Standard of Review

Parties may obtain discovery regarding any non-privileged matter that is relevant to the subject matter involved in the pending litigation. Fed.R.Civ.P. 26(b)(1). The information sought need not be admissible at trial as long as the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed.R.Civ.P. 26(b)(1).

Notwithstanding the breadth of the discovery rules, the district courts are afforded discretion under Rule 26(c) to issue protective orders limiting the scope of discovery. Dove v. Atlantic Capital Corp., 963 F.2d 15, 19 (2d Cir. 1992) ("[t]he grant and nature of protection is singularly within the discretion of the district court...."). When the party seeking the protective order demonstrates good cause, the court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... that the disclosure or discovery not be had." Fed.R.Civ.P. 26(c)(1). "The party resisting discovery bears the burden of showing why discovery should be

denied." Chamberlain v. Farmington Sav. Bank, 247 F.R.D. 288, 289 (D. Conn. Nov. 30, 2007) (citing Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975)).

Discussion

In connection with this case, plaintiff was deposed on June 29 and July 12, 2011. At the deposition, plaintiff made certain statements denying the improper sexual contact between him and the minor victim, and refusing to acknowledge the authenticity of probation records shown to him at the deposition by defendant's counsel. Following the deposition, defendant's counsel noticed the deposition of plaintiff's probation officer, Katherine McKeon.

On July 9, 2011, plaintiff filed a motion for protective order seeking to either prevent the deposition entirely or limit the scope of the deposition. Plaintiff argues that the deposition will have an *in terrorem* effect on plaintiff's pursuit of this case, given that disclosure to the probation officer of certain facts of this case could subject plaintiff to criminal prosecution for violation of his probation. In particular, plaintiff is concerned that his deposition denials of engaging in the criminal conduct, if known to the probation officer, could lead to a probation violation charge. In an effort to avoid the deposition, plaintiff offers to stipulate (1) to the authenticity of the probation records and (2) that there is a discrepancy between the statements plaintiff has made as a part of his sexual offender treatment and the statements made under oath in

this case.  Defendant opposes the motion for protective order [Doc. #46], arguing that there are protective orders in place that would protect any confidentiality concerns, and that the deposition is warranted for impeachment purposes and to inquire about statements plaintiff made to the probation officer that are relevant to the case.

The Court heard argument on September 22, 2011.  At oral argument, it was decided to continue the matter to allow defendant to obtain documents from the probation officer to see whether in fact plaintiff has been inconsistent in his statements to the probation officer and in his treatment, such that it would make no difference to depose the PO and show her the plaintiff's deposition, where he denies any wrongdoing. In addition, it was agreed that plaintiff would file an amended complaint withdrawing paragraph 17, which alleged that Smith threatened to file false criminal charges against plaintiff and did file the false charges.

Following the hearing, plaintiff filed the amended complaint withdrawing the previous ¶ 17, and defendant sought records from plaintiff's probation officer. Still, the parties were unable to arrive at a resolution and a second argument took place on December 16, 2011. At this second hearing, plaintiff's counsel reiterated that he would stipulate to the authenticity of the records and to plaintiff's inconsistent statements, but maintained the position that conducting the probation officer's deposition and showing the probation officer plaintiff's statements in which he denied engaging

5

in the conduct that is the subject of the criminal guilty plea could subject plaintiff to new criminal charges being brought against him for violation of the terms of probation.  Defendant's counsel stated that since the argument she had received and reviewed probation records she was able to obtain without a court order and talked to the probation officer. Defendant is pursuing the deposition to inquire into oral statements plaintiff made to the probation officer that may not have been recorded, and any other topics that might lead to admissible evidence, including the ability to impeach the plaintiff.  After careful consideration of the arguments and the record before the Court, the Court rules as follows.

    The relationship between a probation officer and probationers is a unique one, requiring a significant degree of trust between the offender and his or her officer, in order to successfully accomplish the goals of the probation. So much so, that some jurisdictions recognize a privilege between probation officers and probationers. Michigan recognizes a limited privilege which attaches to all communications made within the scope of the probation officer's duties. See People v. Burton, 74 Mich. App. 215 (1977); Mich Comp. Laws § 791.229. Similarly Wyoming and South Carolina protect as privileged  all information and data obtained in the discharge of official duties by probation and parole agents. W.S. 1977 § 7-13-409; Code 1976 § 24-21-290. South Carolina's privilege, as interpreted by the state's highest court, goes as far as prohibiting a probationer's statements as admissions in court for any purpose, including

impeachment. See State v. Hook, 356 S.C. 421, 425 (2003).

The importance of the work of probation officers and of maintaining the confidentiality of probation information was addressed in Johnson Cherry Creek L.L.C. v. United States, 469 F. Supp. 2d 725 (S.D. Iowa 2007). There, the district court, as a matter of first impression, held that good cause existed to permit a moving company to subpoena and depose a federal probation officer in relation to the probationer's civil lawsuit against the moving company, given that the moving company was unable to locate any witness other than the probation officer who could provide opinion testimony about the probationer's character for truthfulness. The court cautioned that the outcome was a unique one that the court "does not believe is likely to recur with frequency." Id. at 727. The court noted that as

> a general matter, probation officers should not be subject to being called as character witnesses in civil litigation pertaining to offenders under their supervision. Were such a practice to become commonplace, it could easily disrupt the important tasks charged to probation officers in ensuring offender compliance and community safety.

Id. at 727.

Neither Connecticut nor the federal rules of evidence recognize a privilege between probation officer and probationer. However, this court has the power to prevent disclosure of information and "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense,

including ... that the disclosure or discovery not be had." Fed.R.Civ.P. 26(c)(1).

The Court is concerned with the burden to the probation officer who has no interest in the outcome of this litigation, and the plaintiff's right to pursue his civil action without the threat of criminal consequences. With regard to the burden to the probation officer, the Court, as in <u>Johnson Cherry Creek</u>, is mindful of the hard work undertaken by probation officers with increasingly limited resources. As such, any deposition the Court may permit will be limited in time and scope to avoid any undue burden on the probation officer, who should not be tied up in private litigation.

With regard to the plaintiff's right to pursue a civil action, the Court is unpersuaded that the deposition of his probation officer, with proper limits in place, would have the chilling effect conveyed by plaintiff's counsel. As articulated by both counsel, the allegations in this case have been covered by the media and the probation officer is aware of the civil case and that plaintiff sat for a deposition.

On the other hand, the Court deems much of defendant's stated purpose for the deposition as cumulative and duplicative, especially where plaintiff will stipulate to the authenticity of the probation documents and to the inconsistencies in his deposition for impeachment purposes.  Balancing the liberal rules of discovery against the undue burden to the probation officer and potential

oppressive consequences to plaintiff, the Court will allow a deposition of no more than 2 hours, limited to statements made by the plaintiff to the probation officer regarding emotional distress suffered by plaintiff as a result of his probation, reasons for leaving UConn, or other topics related to his treatment, probation, family life, work life, health and economic situation, which were either memorialized in probation documents or which the probation officer recollects. Given the cumulative nature of any potential testimony from the probation officer regarding plaintiff's inconsistencies at the deposition and the potential harm to plaintiff, the defendant will not be permitted to show or reveal to the probation officer plaintiff's deposition statements in any way.[1] Defendant may show the probation officer the amended complaint, as it is a public document.  Plaintiff shall stipulate in writing to the authenticity of the probation records and to the inconsistencies in his deposition testimony.

Conclusion

Accordingly, plaintiff's motion for protective order **is GRANTED IN PART AND DENIED IN PART [Doc. #44].**  The deposition will take place at a time and place convenient for the probation officer within

---

[1] The Court is concerned that the protective order in place would not ensure the confidentiality necessary and possibly place the probation officer in a dilemma with regard to her reporting obligations.

21 days of this ruling. Dispositive motions are due February 15, 2012.

This is not a recommended ruling.  This is a discovery ruling and order which is reviewable pursuant to the "clearly erroneous" statutory standard of review.  28 U.S.C. § 636 (b)(1)(A); Fed. R. Civ. P. 6(a), 6(e) and 72(a); and Rule 2 of the Local Rules for United States Magistrate Judges.  As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

SO ORDERED at Bridgeport this 4th day of January 2012.

                                          /s/
                                   HOLLY B. FITZSIMMONS
                                   UNITED STATES MAGISTRATE JUDGE