UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN DOE, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | 3:09-cv-01071-WWE |
| | : | |
| THE UNIVERSITY OF CONNECTICUT, | : | |
|     Defendant. | : | |

## MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff filed this action against defendant University of Connecticut, asserting violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000 *et seq*.  Specifically, plaintiff asserts that defendant discriminated against him by subjecting him to sexual harassment and retaliated against him for making complaints about the harassment.

Defendant has moved for summary judgment.  For the following reasons, defendant's motion will be granted in part and denied in part.

## BACKGROUND

The parties have submitted statements of facts, affidavits, and supporting exhibits.  These submissions reflect the following factual background.

Plaintiff began working for Dining Services at defendant University in August 1998.  He resigned from Dining Services on June 2, 1999.  Plaintiff was later hired as a permanent employee, holding various titles from January 2002 through March 19, 2008, when he was terminated following a felony conviction.

After returning to work for defendant in 2002, plaintiff became a Program Aide in defendant's International Affairs department.  Plaintiff served a temporary assignment in a higher

class as a Business Services Supervisor.  However, at all relevant times, plaintiff's actual job title was Program Aide.

Plaintiff was arrested by University police on May 6, 2006.  Defendant placed him on administrative leave following the arrest from May 8, 2006 through October 6, 2006.  Plaintiff agreed to serve a fifteen day unpaid disciplinary suspension for "threatening and abusive conduct towards [his] supervisors and others during and after a work-related social function."  By the terms of the agreement, plaintiff acknowledged that further conduct of a similar nature would be cause for discipline up to and including dismissal from his employment.

Plaintiff's May 6 arrest resulted in a criminal conviction on June 26, 2007.  Plaintiff is not claiming the three week disciplinary suspension as part of his damages in this lawsuit.

Plaintiff was arrested again on March 9, 2007 and was charged with a felony for sexually assaulting a minor, his supervisor's daughter.  He was convicted on January 18, 2008 of a Class C felony.  Under the terms of plaintiff's probation, he could not have any contact with children under the age of eighteen, other than his own children.  Plaintiff is not claiming as damages in this lawsuit that he was wrongfully dismissed from his employment.

**Plaintiff's Allegations Against His Supervisor**

Plaintiff has alleged that his immediate supervisor at defendant University subjected him to unwelcome sexual harassment, including forcing plaintiff to engage in both anal and oral sex in the workplace, two to three times per week.  Plaintiff testified that the last time he submitted to his supervisor's advances was March 27, 2006.  The last time he was subjected to sexual advances was May 6, 2006, immediately prior to his arrest for threatening his supervisor.

Defendant has an Office of Diversity and Equity ("ODE") which monitors the

University's compliance with federal and state statutes related to diversity and civil rights, including Title VII.  ODE also serves as the University's neutral investigative unit for internal discrimination complaints.

At all relevant times, defendant's civil rights policies and procedures were posted throughout the University.  Their policies can also be viewed on ODE's website and the University's e-policy website.  Defendant has a well publicized policy against harassment of any kind, including sexual harassment.  In accordance with state law, defendant provided diversity and harassment prevention training to its employees.

Plaintiff filed a formal complaint with ODE on June 29, 2006.  The complaint detailed the alleged unwelcome sexual harassment by plaintiff's supervisor.  At the time of the complaint, plaintiff was under investigation following his arrest for threatening on May 6, 2006, and was on paid administrative leave.

Upon filing of the complaint, ODE immediately contacted both the Office of the Attorney General and Human Resources.  Defendant immediately placed plaintiff's supervisor on paid administrative leave while the allegations were investigated.  Plaintiff's supervisor never returned to work at defendant University.

After investigating plaintiff's allegations of sexual harassment against his supervisor, ODE concluded that the supervisor had violated the University's sexual harassment policy. Human Resources scheduled a pre-disciplinary hearing to discipline plaintiff's supervisor, but he resigned before the hearing was completed.

**DISCUSSION**

A motion for summary judgment must be granted if the pleadings, discovery materials

before the court and any affidavits show that there is no genuine issue as to any material fact and

it is clear that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c);

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A dispute regarding a material fact is genuine if there is sufficient evidence that a

reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986).  The burden is on the moving party to demonstrate the absence of

any material factual issue genuinely in dispute.  Am. Int'l Group, Inc. v. London Am. Int'l Corp.,

664 F.2d 348, 351 (2d Cir. 1981).

If a nonmoving party has failed to make a sufficient showing on an essential element of

his case with respect to which he has the burden of proof, then summary judgment is appropriate.

Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely

colorable," legally sufficient opposition to the motion for summary judgment is not met.  Liberty

Lobby, 477 U.S. at 24.  The mere existence of a scintilla of evidence in support of the

nonmoving party's position is insufficient; there must be evidence on which the jury could

reasonably find for him.  See Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir.

2004).

On summary judgment, the court resolves all ambiguities and draws all permissible

factual inferences in favor of the nonmoving party.  See Patterson v. County of Oneida, 375 F.3d

206, 218 (2d Cir. 2004).  If there is any evidence in the record from which a reasonable inference

could be drawn in favor of the opposing party on the issue on which summary judgment is

sought, summary judgment is improper.  See Security Ins. Co. of Hartford v. Old Dominion

Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

**Discrimination (Sexual Harassment)**

Title VII discrimination claims are analyzed under the burden-shifting framework whereby the plaintiff must first establish a *prima facie* case by a preponderance of the evidence. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 251 (1981).  If the plaintiff succeeds in establishing a *prima facie* case, the burden of production shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its action.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  If the employer is able to articulate a nondiscriminatory reason for its action, the plaintiff bears the burden of showing that the employer's proffered reason for its action was merely a pretext for discrimination.  Id. at 804.

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1). Employer liability depends on whether the alleged harassment was perpetrated by supervisors or coworkers.  See Faragher v. City of Boca Raton, 524 U.S. 775, 807-08 (1998).  Employers are strictly liable for harassment inflicted by supervisors, but they can assert an affirmative defense when the harassment does not result in a tangible employment action.  See id.

A tangible employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  Ellerth v. Burlington Industries, Inc., 524 U.S. 742, 761 (1998).  Where facts support a finding of a tangible employment action, an affirmative defense in not available to the employer.  See id. at 765.

Defendant does not deny that plaintiff was subject to sexual harassment.  Still, defendant

argues that plaintiff was not subject to tangible employment action because plaintiff did not

suffer a demotion or a decrease in economic benefits.  See Lee v. Glessing and Palantine

Nursing Home, 140 F. Supp. 2d 215 (N.D.N.Y. 2001).  However, the Second Circuit has held

that "[r]equiring an employee to engage in unwanted sex acts . . . fits squarely within the

definition of 'tangible employment actions' that the Supreme Court announced in Faragher and

Ellerth."  Jin v. Metropolitan Life Ins. Co., 310 F.3d 84, 94 (2d Cir. 2002).  Plaintiff need not

prove additional "direct economic harm."  Id.  Therefore, defendant may not assert its affirmative

defense to employer liability, and defendant's motion for summary judgment on plaintiff's

discrimination claim will be denied.

**Retaliation**

To state a claim for retaliation in violation of Title VII, a plaintiff must show that: (1) he

participated in a protected activity known to the defendant; (2) the defendant took an

employment action disadvantaging him; and (3) there exists a causal connection between the

protected activity and the adverse action.  Patane v. Clark, 508 F.3d 106, 115 (2d Cir. 2007).

Here, plaintiff asserts that both his complaint to ODE and his resistance of sexual

advances constitute protected activity.

Plaintiff's complaint to ODE in June, 2006 clearly qualifies as protected activity.

However, whether rejecting sexual advances, in and of itself, constitutes a protected activity is an

open question in the Second Circuit.  See Reid v. Ingerman Smith LLP, 2012 WL 2700508 at *9

(E.D.N.Y. 2012).  The Court adopts the view that the mere rejection of sexual advances does not

constitute a protected activity.  If resisting advances constituted a protected activity, then "every

harassment claim would automatically state a retaliation claim as well."  Del Castillo v.

Pathmark Stores, Inc., 941 F. Supp, 437, 439 (S.D.N.Y 1996). "The law protects employees in the filing of formal charges of discrimination as well as in the making of informal protests of discrimination, including making complaints to management," Gregory v. Daly, 243 F.3d 687, 700-701 (2d Cir. 2001), but protection does not extend to the mere rebuke of advances. Reid 2012 WL 2700508 at *9. Thus, plaintiff's complaint to ODE remains as plaintiff's only protected activity.

Plaintiff asserts that the following conduct constituted adverse actions: (1) threats and intimidation by his supervisor; (2) a change in reporting structure imposed by his supervisor; (3) the suspension imposed on plaintiff for threatening his supervisor; and (4) the filing of false criminal charges in May, 2006. However, plaintiff has not offered evidence of a causal connection between these actions and his ODE complaint. Indeed, all four of the actions began before plaintiff filed his complaint with ODE on June 29, 2006. Plaintiff never worked with his supervisor after his May 6, 2006 arrest. At that time, the change to plaintiff's reporting structure had already been implemented. Obviously, the filing of criminal charges in May, 2006 predated plaintiff's June, 2006 complaint. Finally, plaintiff was placed on administrative leave following his arrest from May 8, 2006 until October 6, 2006. Although the stipulated fifteen-day suspension was not finalized until September, the arrest, investigation, suspension, and criminal conviction of plaintiff resulted from plaintiff's threatening and abusive conduct during and after a work-related social function on the night of May 5, 2006. Plaintiff has offered no evidence of a causal connection between his suspension and his complaint to ODE. As no reasonable jury could find a causal connection between plaintiff's protected activity and defendant's adverse actions, summary judgment will be granted for defendant on plaintiff's retaliation claim.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is GRANTED in part and DENIED in part.  Defendant's motion for summary judgment is GRANTED as to plaintiff's retaliation claim.  Defendant's motion for summary judgment is DENIED as to plaintiff's discrimination claim.

Dated this 25th day of October, 2012 at Bridgeport, Connecticut.


_____/s/_____
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE