IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

-------------------------------------------------------X
                               :

JOHN DOE                       :           3:09 CV 1071 (JGM)
                                 :

V.                             :
                                 :

UNIVERSITY OF CONNECTICUT    :        DATE: AUGUST 22, 2013
                                 :
-------------------------------------------------------X

RULING ON MULTIPLE MOTIONS IN LIMINE

On July 7, 2009, plaintiff filed his two-count Complaint (Dkt. #1), which alleged sexual harassment under Title VII (First Count) and retaliation under Title VII (Second Count), with regard to his employment with the Director of International Services and Programs ["DISP"] at the University of Connecticut ["defendant" or "UConn"], from 1998 through May 8, 2006.  (See also Dkt. #6, filed under seal). That same day, plaintiff filed his Motion for Protective Order to File Complaint under Fictitious Name and Motion to Seal (Dkt. #4), which was granted one week later (Dkt. #5) by Senior U.S. District Judge Warren W. Eginton, to whom this file previously had been assigned.  On November 20, 2009, defendant filed its Answer and Affirmative Defenses, also under seal.  (Dkt. #12; see also Dkts. ##48-49).[1] On October 21, 2010, the parties filed a Stipulation of Confidentiality and Protective Order. (Dkt. #35). On October 3, 2011, plaintiff filed an Amended Complaint (Dkt. #63; see also Dkt. #66 (unredacted version filed under seal)),[2] and defendant filed its Answer and Affirmative Defenses on October 5, 2011.  (Dkt. #65).

---

[1]On November 24, 2009, defendant filed a Motion to Disqualify Counsel (Dkt. #14), which was denied by Judge Eginton on January 11, 2010.  (Dkt. #21).

[2]The Amended Complaint omitted ¶ 17, which alleged that in July 2006, plaintiff's supervisor at defendant filed false criminal charges against plaintiff as retaliation; plaintiff pled nolo contendere to these charges in January 2008.  (See also Dkts. ##59-61).

On August 4, 2010, defendant filed its Sealed Motion for Protective Order (Dkt. #29), to refer to plaintiff's supervisor at defendant UConn as "John Smith," and to refer to John Smith's daughter as "Mary Smith," a minor child and non-party witness.  (See also Dkts. ##28, 30).   Judge Eginton referred this motion to U.S. Magistrate Judge Holly B. Fitzsimmons on August 16, 2010 (Dkt. #31; see also Dkts. ##52, 72), who granted the motion two days later. (Dkt. #32).  On July 9, 2011, plaintiff filed a Motion for Protective Order, with respect to defendant seeking the deposition of Doe's Adult Probation Officer, which Judge Fitzsimmons granted in part. (See Dkts. ##44, 70, 76; see also Dkts. ##46, 50-51, 56-58, 61-62, 67-69, 71, 75).

On January 27, 2012, defendant filed a Motion for Summary Judgment (Dkt. #73); on October 25, 2012, Judge Eginton denied the motion with respect to plaintiff's First Count, but granted the motion with respect to plaintiff's Second Count.  (Dkt. #91; see also Dkts. ##77-90, 92, 96, 98, 103).

On March 12, 2013, the parties consented to trial before this Magistrate Judge. (Dkts. ##118-19).[3]   On May 3, 2013, the parties filed their Joint Trial Memorandum.  (Dkt. #151[4]; see also Dkts. ##123-24, 126, 166, 169-72).

_____

[3]This case presumably had been ready for trial since early March 2013.  (See Dkts. ##93, 104-07, 116-17).

[4]The JTM is notable for that fact that of seven exhibits listed by plaintiff, defendant has objected to five of them, and reserves the right to object to the remaining two (Nos. 2, 7), and of the forty-three exhibits listed by defendant, plaintiff objects to forty of them, reserves the right to object to one more (No. 31), and does not object to just two exhibits (Nos. 16, 28). (See Dkt. #151, at 6-16).

On June 27, 2013, plaintiff filed his Amended Exhibit List (Dkt. #172), reducing the number of exhibits to three, as to which defendant objects to two (Nos. 1, 3) and reserves the right to object to the last one (No. 2).  (See Dkt. #151, at 6).

Three days earlier, on June 24, 2013, defendant filed its Amended Exhibit List (Dkt. #171), withdrawing three exhibits (Exhs. M, Y and EE, formerly Exhs. 13, 25 and 31), so that of the forty

After four years of litigation, there are now an unprecedented <u>thirteen</u> Motions <u>In Limine</u> pending before the Court, as follows:

(1) Defendant's Motion re: Preparation for Trial Testimony of Plaintiff's State of Connecticut Judicial Branch Adult Probation Officer, filed March 15, 2013 (Dkt. #120),[5] as to which plaintiff filed a brief in opposition on April 2, 2012 (Dkt. #127);

(2) Defendant's Motion for Protective Order, filed March 28, 2013 (Dkt. #122), with respect to the confidential health information of non-party Mary Smith, as to which plaintiff filed his brief in opposition on April 17, 2013 (Dkt. #138);

(3) Defendant's Motion <u>In Limine</u> re: Plaintiff's Expert Witness, filed April 10, 2013 (Dkt. #130),[6] as to which plaintiff filed his brief in opposition on May 1, 2013 (Dkt. #146)[7];

(4) Defendant's Supplemental Motion <u>In Limine</u> re: Records of David Bonnano, Psy.D, Plaintiff's Expert Witnesses, filed April 12, 2013 (Dkt. #133),[8] as to which plaintiff filed his

―――――――――――――――――

exhibits listed by defendant, plaintiff objects to thirty-eight of them, and does not object to just two exhibits (Exhs. P, BB, formerly Exhs. 16, 28).

The hostility between counsel in this lawsuit is palpable, and must stop now.

[5]Attached as Exh. A is a redacted excerpt from the proceeding in <u>State of Connecticut v. John Doe</u>, WWM-CR07-0131449T, at the Danielson Superior Court, before Judge Antonio C. Robaina, on January 18, 2008 ["Plaintiff's Guilty Plea Proceedings"].

[6]The following five exhibits are attached: copy of plaintiff's Expert Disclosure (for Dr. David Bonnano), dated March 24, 2011 (Exh. A); excerpts from the deposition of plaintiff John Doe, taken on July 12, 2011 (Exh. B)["Plaintiff's Depo."]; copy of Plaintiff's Answers to Defendant's First Set of Interrogatories and Requests for Production, dated February 25, 2010 (Exh. C); copy of Dr. Bonnano's Records, from September 17, 2008 through October 15, 2010, filed under seal (Exh. D; <u>see also</u> Dkt. #137); and additional copy of excerpts from Plaintiff's Guilty Plea Proceedings (Exh. E). (<u>See also</u> Dkts. ##129, 131-32, 134, 137).

[7]Attached as Exh. A is a redacted copy of a letter between counsel, dated July 9, 2011.

[8]The following two exhibits are attached: copy of e-mail between counsel, dated April 11, 2013 (Exh. A), and copy of plaintiff's Authorization for Release of Medical Records in Connecticut to Dr. Bonnano, dated August 3, 2011, filed under seal (Exh. B; <u>see also</u> Dkt. #136).

brief in opposition on May 1, 2013 (Dkt. #146);[9]

(5) Defendant's Motion <u>In Limine</u> re: Unproved Allegations and Claims, filed April 15, 2013 (Dkt. #135),[10] as to which plaintiff filed his brief in opposition on May 6, 2013 (Dkt. #154);

(6) Defendant's Motion <u>In Limine</u> re: Plaintiff's Continued Use of Fictitious Name, filed April 25, 2013 (Dkt. #140),[11] as to which plaintiff filed his brief in opposition on May 16, 2013 (Dkt. #161);

(7) Defendant's Motion <u>In Limine</u> re: Acts for Which Plaintiff Has Failed to Exhaust his Administrative Remedies, also filed April 25, 2013 (Dkt. #142),[12] as to which plaintiff filed his brief in opposition on May 16, 2013 (Dkt. #160);

(8) Defendant's Motion <u>In Limine</u> re: Sexual History, Orientation or Predisposition of Non-Parties, filed April 29, 2013 (Dkt. #143), regarding John Smith and Mary Smith, as to which plaintiff filed his brief in opposition on May 20, 2013 (Dkt. #162);

(9) Defendant's Motion <u>In Limine</u> re: <u>Quid Pro Quo</u> Theory of Liability, filed May 3, 2013 (Dkt. #148), as to which plaintiff filed his brief in opposition on May 21, 2013 (Dkt. #163);

---

[9]<u>See</u> note 7 <u>supra</u>.

[10]Attached as Exh. A are excerpts from the deposition of plaintiff John Doe, taken on June 29, 2011 ["Plaintiff's Depo."].

[11]The following three exhibits are attached: copy of Sex Offender Registry of the State of Connecticut, filed under seal (Exh. A); copy of Affidavit of Illegal Discriminatory Practice, sworn to September 18, 2006 (Exh. B); and copy of complaint in <u>John Doe v. Department of Children & Families</u>, filed in the New Britain Superior Court, filed under seal (Exh. C).  (<u>See also</u> Dkts. ##139, 141, 144-45, 147).

[12]The following three exhibits are attached: additional excerpts from Plaintiff's Depo, taken on July 12 and June 29, 2011 (Exhs. A- B); and another copy of the Affidavit of Illegal Discriminatory Practice, sworn to September 18, 2006 (Exh. C).

(10) Plaintiff's Motion <u>In Limine</u> to Exclude Evidence of Plaintiff's Arrests and <u>Alford</u> Plea, also filed May 3, 2013 (Dkt. #149), as to which defendant filed its brief in opposition on May 31, 2013 (Dkt. #167);

(11) Plaintiff's Motion <u>In Limine</u> to Exclude Testimony Refuting the Findings of the Office of Diversity and Equity Report, also filed May 3, 2013 (Dkt. #150; <u>see also</u> Dkts. ##155-57)(Exh. A., filed under seal), as to which defendant filed its brief in opposition on May 31, 2013 (Dkt. #168);

(12) Plaintiff's Motion <u>In Limine</u> to Exclude CHRO Dismissal, also filed May 3, 2013 (Dkt. #152), as to which defendant filed its brief in opposition on May 31, 2013 (Dkt. #168); and

(13) Plaintiff's Motion <u>In Limine</u> to Exclude Testimony Regarding Termination of Employment or Social Security Disability Benefits, also filed May 3, 2013 (Dkt. #153), as to which defendant filed its brief in opposition on May 31, 2013 (Dkt. #168).[13]

## I.  DISCUSSION

These thirteen motions can be placed into five generic categories, addressed below, as follows:

(A) three motions regarding the scope of plaintiff's allegations against defendant, namely Defendant's Motion <u>In Limine</u> re: Unproved Allegations and Claims (Dkt. #135), Defendant's Motion <u>In Limine</u> re: Acts for Which Plaintiff Has Failed to Exhaust his Administrative Remedies (Dkt. #142), and Defendant's Motion <u>In Limine</u> re: <u>Quid Pro Quo</u> Theory of Liability (Dkt. #148);

---

[13]A fourteenth motion was filed by defendant on July 30, 2013, namely its Motion to Compel and for Sanctions re: Discovery and Disclosure Required Pursuant to Rules 26 and 37 (Dkt. #173; <u>see also</u> Dkt. #174), which will be addressed in a separate ruling.

(B) three motions regarding the impact, if any, of three separate administrative proceedings, namely Plaintiff's Motion In Limine to Exclude Testimony Refuting the Findings of the Office of Diversity and Equity Report (Dkt. #150), Plaintiff's Motion In Limine to Exclude CHRO Dismissal (Dkt. #152), and Plaintiff's Motion In Limine to Exclude Testimony Regarding Termination of Employment or Social Security Disability Benefits (Dkt. #153);

(C)   four motions regarding plaintiff's criminal prosecutions, namely Defendant's Motion re: Preparation for Trial Testimony of Plaintiff's State of Connecticut Judicial Branch Adult Probation Officer (Dkt. #120), Defendant's Motion for Protective Order (Dkt. #122), Defendant's Motion In Limine re: Sexual History, Orientation or Predisposition of Non-Parties (Dkt. #143), and Plaintiff's Motion In Limine to Exclude Evidence of Plaintiff's Arrests and Alford Plea (Dkt. #149);

(D) one motion regarding fictitious names, that is, Defendant's Motion In Limine re: Plaintiff's Continued Use of Fictitious Name (Dkt. #140); and

(E) two motions regarding expert testimony, namely Defendant's Motion In Limine re: Plaintiff's Expert Witness (Dkt. #130) and Defendant's Supplemental Motion In Limine re: Records of David Bonnano, Psy.D (Dkt. #133).

It is simply unfathomable that after so much activity in this file, there is still such a gaping disconnect between the parties as to what are the factual and legal issues in this lawsuit.  For some of these issues, particularly those addressed in Section I.A. infra, these critical matters should have been addressed long, long ago, and not literally on the verge of trial.[14]

---

[14]In addition, the briefs of both counsel treated these critical issues in a superficial and cursory manner, with remarkably few citations.  The deficiencies were most acute with respect to the significant substantive and evidentiary issues addressed in Sections I.A. and I.B. infra.

A. THREE MOTIONS REGARDING THE SCOPE OF PLAINTIFF'S ALLEGATIONS AGAINST DEFENDANT

1. DEFENDANT'S MOTION IN LIMINE RE: QUID PRO QUO THEORY OF LIABILITY (DKT. #148)

In this motion, defendant argues that plaintiff's claims are limited to the theory of quid pro quo, and not hostile work environment. (Dkt. #148). Defendant argues as follows (Dkt. #148, at 1-2): plaintiff's original complaint, filed July 7, 2009, only alleged quid pro quo sexual harassment (Dkts. ##1 & 6, ¶ 6);[15] on September 22, 2011 plaintiff's counsel offered to withdraw ¶ 17 regarding false criminal charges against plaintiff[16] (to which defense counsel obviously agreed) but wanted to add a paragraph alleging hostile work environment (to which defendant counsel objected); only ¶ 17 was discussed before Judge Fitzsimmons on September 22, 2011 at an oral argument before her on a discovery dispute (see Dkt. #62, at 4-5, 22-23; see also Dkts. ##59-60), so that plaintiff's Amended Complaint, filed October 3, 2011, retained the same language for quid pro quo sexual harassment (Dkt. #63, ¶ 6), but added no new language about hostile work environment; plaintiff has never moved to amend his complaint to add hostile work environment; and plaintiff made this claim for the first time in a recent brief (see Dkt. #146, at 2).

In opposition, plaintiff's argument is as follows (Dkt. #163, at 1-2 & n.1): that ¶ 6 of all his complaints alleges "severe[]" sexual harassment, namely forced homosexual sexual relations from 2002 through May 2006, and the complaints include discussion of two specific incidents on March 27 and May 8, 2006 (¶¶ 13, 15); that there was no conversation between counsel on September 22, 2011 regarding an amendment to that effect; and that plaintiff's

---

[15]As previously indicated, Judge Eginton granted defendant's Motion for Summary Judgment with respect to plaintiff's Second Count for retaliation.  (Dkt. #91).

[16]See note 2 supra.

brief in opposition to defendant's summary judgment, filed on March 19, 2012, specifically stated that plaintiff "does allege 'sexual harassment' in his complaint in violation of Title VII and sufficient facts to support a claim of 'hostile environment' or 'quid pro quo.'" (Dkt. #79, at 6, n.1).

As the Second Circuit has explained, "[a]lthough the terms 'quid pro quo' and 'hostile work environment' do not appear in the text of Title VII, they are useful to distinguish between 'cases involving a threat which is carried out and offensive conduct in general.'" Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 603 (2d Cir. 2006), citing Mormol v. Costco Wholesale Corp., 364 F.3d 54, 57 (2d Cir. 2004), quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 753 (1998)["Ellerth"].  In Schiano, where the plaintiff characterized her claim as a "quid pro quo" action for the first time on appeal, the Second Circuit emphasized:

> [W]e are hesitant to suggest a rigid rule that would require plaintiffs to use the words "quid pro quo" or "hostile work environment" in the district court or else be treated as having waived such claims.  Because these terms are judicially created for analytical purposes, not distinctions in the statute itself, we think it is most appropriate . . . to look to the substance of the alleged misconduct of which the plaintiff complains rather than the terms used to describe it.

Schiano, 445 F.3d at 604.  Quoting extensively from the Ellerth decision, the Second Circuit distinguished "quid pro quo" claims from "hostile work environment" claims as follows:

> When a plaintiff proves that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands, he or she establishes that the employment decision itself constitutes a change in the terms and conditions of employment that is actionable under Title VII.  If, however, a "claim involves only unfulfilled threats, it should be categorized as a hostile work environment claim which requires a showing of severe or pervasive conduct."  "The terms quid pro quo and hostile work environment are helpful, perhaps, in making a rough demarcation between cases in which threats are carried out and those where they are not or are absent altogether, but beyond this are of limited utility."

Id. at 603-04 (emphasis added), quoting Ellerth, 524 U.S. at 751, 753-54.  See also

Mormol, 364 F.3d at 57; Jin v. Metropolitan Life Ins. Co., 310 F.3d 84, 91 (2d Cir. 2002).

Thus, as the Second Circuit explained in Schiano:

> If, for example, a plaintiff were to argue that she had been demoted for refusing to respond positively to her supervisor's sexual overtures, we would think that the assertion would preserve her quid pro quo claim even if she never used the phrase "quid pro quo" in the district court to describe it.

445 F.3d at 604.  In Jin, with factual allegations remarkably similar to those here, 310 F.3d at 88-89, the Second Circuit held "explicitly conditioning . . . [plaintiff's] continued employment on her submission to [her supervisor's] sexual demands[]" constituted "tangible employment actions[.]" 310 F.3d at 94.  The Second Circuit continued in Jin:

> Requiring an employee to engage in unwanted sex acts is one of the most pernicious and oppressive forms of sexual harassment that can occur in the workplace.  The Supreme Court has labeled such conduct "appalling" and "especially egregious."  It is hardly surprising that this type of conduct–a classic quid pro quo for which courts have traditionally held employers liable–fits squarely within the definition of "tangible employment action[.]"

310 F.3d at 94, quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 22 (1993).

As has been explained by then Court of Appeals Judge Sonia Sotomayor, with respect to claims of "hostile work environment":

> A work environment is "abusive" when harassment has reached a certain qualitative level that is "sufficiently severe or pervasive [so as] to alter the conditions of the victim's employment."  To decide whether conduct rises to this level, "the trier of fact must determine the existence of sexual harassment in light of the record as a whole and the totality of [the] circumstances."  Within the totality of the circumstances are "the quantity, frequency, and severity of the incidents . . . factors [that] must be considered cumulatively, so that we may obtain a realistic view of the work environment."

Raniola v. Bratton, 243 F.3d 610, 617 (2d Cir. 2001),  quoting, inter alia, Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67, 69 (1986).  "To establish the existence of a hostile work environment, the plaintiff must show both that the environment was objectively hostile and that the plaintiff subjectively perceived it to be hostile[.]" Raniola, 243 F.3d at 620.

9

Judge Sotomayor explained:

> As to the objective measure of abuse, "[t]here is neither a threshold magic number of harassing incidents that gives rise, without more, to liability as a matter of law, nor a number of incidents below which a plaintiff fails as a matter of law to state a claim." To succeed, a plaintiff must demonstrate "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." The Supreme Court has set forth a non-exclusive list of factors to consider when evaluating a workplace environment, consisting of

>> the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

Id. at 620-21, quoting, inter alia, Harris, 510 U.S. at 23.

Multiple decisions within this Circuit have differentiated between abuse that was "severe and pervasive" with those that were minor, short-lived and/or isolated. Compare Raniola, 243 F.3d at 621 ("[W]ithin the space of two and a half years time, [plaintiff female police officer] was subjected to offensive sex-based remarks, disproportionately burdensome work assignments, workplace sabotage, and one serious public threat of physical harm by [her male] Captain."); Sebold v. City of Middletown, No. 3:05 CV 1205 (AHN), 2007 WL 2782527, at *1-9, 10-13 (D. Conn. Sept. 21, 2007)(consistent sexually abusive comments made by male supervisor to female plaintiff over a two-and-one-half year period, as well as retaliatory and disciplinary actions taken against her by him, constituted "intimidation, belittlement, and retaliation [that was] comparable to other cases where the Second Circuit has found a hostile work environment [to be] actionable.")(multiple citations omitted); Evarts v. S. New England Tel. Co., No. 3:00 CV 1124 (WIG), 2006 WL 2864716, at *13-14 (D. Conn.

Oct. 2, 2006)("despite strong reservations," defendant's motion for summary judgment denied in part where female plaintiff relied on "eight facially sex-neutral incidents involving her [male] supervisor . . ., occurring over a ten-month period[,]" including one incident where he "screamed at her so loudly on one occasion that other employees feared for her safety. . . .")(footnote omitted); with Mormol, 364 F.3d at 58-59 ("The episodes of harassment, far from being pervasive, were few and occurred over a short span of time, most of which plaintiff spent on vacation."); McKenna v. VCS Group, LLC, No. 3:08 CV 1563 (VLB), 2009 WL 3193879, at *6   (D. Conn. Sept. 30, 2009)(fifteen sexually oriented comments made by female supervisor to female plaintiff over a seven month period "are at most episodic and do not reach the level of pervasiveness required to allege a Title VII violation."); Absher v. Flexi Int'l Software, Inc., No. 3:02 CV 171 (AHN), 2005 WL 2416203, at *5 (D. Conn. Sept. 30, 2005)("four complained-about incidents in less than a two-week period" by female plaintiff against her male supervisor "were relatively few and occurred over a short period of time and thus were not pervasive under applicable law.")(citations omitted), aff'd, 199 Fed. Appx. 52 (2d Cir. 2006); Presley v. Pepperidge Farm, Inc., 356 F. Supp. 2d 109, 120 (D. Conn. 2005)(where one female plaintiff alleged seven sexually oriented incidents by her male supervisor in August 2001 and two incidents in early December 2001, and another female plaintiff alleged five incidents from late July 2001 to late August 2001, but no other harassment, these "several isolated incidents" were not pervasive). See also Redd v. New York State Div. of Parole, 678 F.3d 166, 169-82 (2d Cir. 2012)(in action brought by pro se plaintiff, fact issue existed whether conduct by female plaintiff's  supervisor, who was also female, was sufficiently severe or pervasive, where supervisor allegedly made sexual advances to her, three times in a five month period, including touching plaintiff's breasts).

"[L]ook[ing] to the substance of the alleged misconduct of which the plaintiff complains  rather than the terms used to describe it[,]" Schiano, 445 F.3d at 604, it is clear that plaintiff has alleged both "quid pro quo" and "hostile work environment" claims under Title VII.  For the period January 2002 through June 2004, plaintiff alleges that Smith would call plaintiff into his office, and behind a locked office door, would touch plaintiff's thighs and genitals, would attempt to kiss him, and eventually engaged in oral and anal sex, two to three times a week, for two and one half years, and despite plaintiff telling Smith "a thousand times" not to touch him, Smith would "constantly remind plaintiff that he was [his] supervisor and that he had given him his job[,]" so that plaintiff was "completely dependent upon Smith for his livelihood. . . ."  (Dkt. #63, ¶¶ 5-6, 9, 11). The Amended Complaint continues that Smith largely was absent from the University from June 2004 through March 2005, while he was traveling to Dubai, and when he returned, plaintiff "began resisting Smith's sexual advances[,]" Smith suggested that plaintiff seek employment elsewhere or apply for disability, Smith "continued to proposition plaintiff for sexual contact[,]" in late March 2006 (on plaintiff's birthday), Smith entered plaintiff's office and after closing the door, grabbed plaintiff's genitals and he said he wanted sexual intercourse with plaintiff, and "Smith continued to touch plaintiff in an inappropriate manner up until plaintiff's last day of work on May 8, 2006[,]" including "declar[ing] his undying love for plaintiff" and "touch[ing] his shoulders, grabb[ing] his hand and forcibly embrac[ing] plaintiff." (Id. ¶¶ 12-13, 15). These allegations are, as defendant acknowledges, "classic 'quid pro quo'" claims.  Jin, 310 F.3d at 94.

However, it is not unusual for a plaintiff to bring a Title VII lawsuit under both quid pro quo and hostile work environment theories.  See, e.g., Mormol, 364 F.3d at 56-59; Schiano, 445 F.3d at 603-08.  Thus, "look[ing] to the substance of the alleged misconduct"

over a two-year period, from 2002 to 2004, and again over a thirteen-fourteen month period, from March 2005 through early May 2006, the allegations made by plaintiff clearly constitute "unfulfilled threats [that] should be categorized as a hostile work environment claim . . . [involving] severe or pervasive conduct." Schiano, 445 F.3d at 603, 604.[17]

Accordingly, defendant's Motion In Limine Re: Quid Pro Quo Theory of Liability (Dkt. #148) is denied.

<u>2. DEFENDANT'S MOTION IN LIMINE RE: ACTS FOR WHICH PLAINTIFF HAS FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES (DKT. #142)</u>

In this motion, defendant seeks to prohibit plaintiff from mentioning or offering any testimony or documents of any tangible employment actions for which plaintiff has failed to exhaust his administrative remedies, as such actions are barred by the statute of limitations; according to defendant, the tangible employment actions fall into three categories: (1) those occurring prior to December 9, 2005; (2) those occurring between December 9, 2005 and October 5, 2006 (but which were not alleged in the CHRO complaint); and (3) those occurring after October 5, 2006.  (Dkt. #142, at 1).

As set forth by defendant (id. at 1-2), a plaintiff first must file a timely charge with the Equal Employment Opportunity Commission ["EEOC"] as a prerequisite to filing suit under Title VII.  42 U.S.C. § 2000e-5(e)(1).  In Connecticut, the filing of an employment discrimination complaint with the Connecticut Commission on Human Rights and Opportunities ["CHRO"] operates as a dual filing with the EEOC.  Section 2000e-5(e) requires that a Charge of Discrimination be filed with the EEOC within three hundred days of the alleged discriminatory act; this statutory requirement is akin to a statute of limitations.  Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 394 (1982).  This limitation period begins to run

---

[17]The timeliness issue will be addressed in the next section, Section I.A.2 infra.

from the date the claimant receives notice of the allegedly discriminatory act. <u>Delaware State College v. Ricks</u>, 449 U.S. 250, 259 (1980).

Because plaintiff filed his administrative complaint with CHRO on October 5, 2006 (Dkt. #142, at 2 & Exh. C), the three hundred day limitation period for Title VII extends back to December 9, 2005. Hence, defendant argues that plaintiff cannot recover for any tangible employment actions that occurred prior to December 9, 2005. (<u>Id.</u> at 2). Similarly, defendant argues that plaintiff cannot recover for any tangible employment actions that occurred after October 5, 2006.[18] (<u>Id.</u>). Thus, defendant argues that the only relevant period here is the middle one, that is, from December 9, 2005 to October 5, 2006. (<u>Id.</u> at 2-4).[19]

With respect to plaintiff's allegations during this time period, defendant argues that plaintiff had failed to exhaust his administrative remedies regarding any alleged sexual acts with his supervisor Smith, in that the only sexual acts of which he complains in his administrative complaint filed with CHRO are from 2002 through mid-2005. (<u>Id.</u> at 4-6 & Exh. C, ¶¶ 5, 8). Defendant argues that plaintiff may not sue on a different theory of discrimination than that raised before EEOC/CHRO because it deprives the administrative agency of its statutory role to investigate and mediate those claims first, and "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." (<u>Id.</u> at 4-5)(citations omitted).

_____

[18]As noted by defendant, plaintiff already has represented in another brief that he is seeking damages only up until May 8, 2006, his last day of work with Smith as his supervisor. (<u>Id.</u> at 2, n.1 & 4, <u>citing</u> Dkt. #127, at 3).

[19]In paragraph 5 of his Amended Complaint, plaintiff alleges that he was demoted from Business Supervisor to Program Aide in November 2005, and that he was terminated on March 19, 2008. (Dkt. #63, ¶ 5). Besides being outside the three hundred day window, plaintiff conceded at his deposition that his job title never changed, he had no decrease in wages, and he is not alleging wrongful termination in March 2008. (Dkt. #142, at 3-4 & Exhs. A-B).

Plaintiff argues in opposition that plaintiff's claims are timely under both quid pro quo and hostile work environment theories, that plaintiff had exhausted his administrative remedies under either theory, that a hostile environment claim is considered timely as long as at least one of the harassing acts occurred within the charging period, that discrete acts occurring before December 5, 2005 can "still be considered as background evidence[,]" and that plaintiff was subjected to threats by Smith until plaintiff's last day of work. (Dk. #160, at 2-5)(citations omitted).   Plaintiff specifically points out that on the cover sheet of his administrative complaint with CHRO, plaintiff alleges sex harassment "on or about 2003-June 2006[,]" (id. at 1, citing Dkt. #142, Exh. C), and for the March 2006 and May 2006 incidents described in the Amended Complaint (Dkt. #63, ¶¶ 13, 15) but not mentioned in the administrative complaint, the Second Circuit permits a "'loose pleading' standard . . . before the EEOC[,]" so that claims not asserted before the EEOC can nonetheless be pursued in subsequent federal litigation if they are "reasonably related" to those filed with the agency. (Dkt. #160, at 5-6)(citations omitted).

The critical U.S. Supreme Court case on this issue is Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002)["Morgan"], wherein the Court differentiated between allegedly discriminatory actions that are "discrete" in nature as opposed to ones that are on a continuum in a hostile environment claim.   With respect to the former, Justice Clarence Thomas explained:

> Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.  Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice." [Plaintiff] can only file a charge to cover discrete acts that "occurred" within the appropriate [three hundred day] period. . . . [O]nly incidents that took place within the timely filing period are actionable.

Id. at 114 (footnote omitted).  The Court suggested, however, an employee may use

prior acts only "as background evidence in support of a timely claim." Id. at 113.

In contrast,

Hostile environment claims are different in kind from discrete acts. Their very nature involved repeated conduct. The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. Such claims are based on the cumulative effect of individual acts.

Id. at 115 (citations omitted). Justice Thomas continued:

A hostile work environment claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1). The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

Id. at 117 (footnote omitted). See also Petrosino v. Bell Atlantic, 385 F.3d 210, 220 (2d Cir. 2004).

The issue of "background evidence" was addressed in Jute v. Hamilton Sundstrand Corp., 420 F.3d 166 (2d Cir. 2005), in which the late Second Circuit Judge Thomas Meskill relied upon the language in Morgan and Petrosino that "evidence of an earlier alleged retaliatory act may constitute relevant 'background evidence in support of [a] timely claim[,]'" to hold that "relevant background evidence, such as statements by a decisionmaker or earlier decisions typifying the retaliation involved, may be considered to assess liability on the timely alleged act." Id. at 176-77 (other citations omitted). Thus, the actions occurring prior to the three hundred day deadline, "although not actionable . . . , might nonetheless remain admissible at trial and could lead a rational jury to find a causal link between the

16

protected activity and the actionable adverse acts." Id. (citations & footnote omitted).[20] See also Carmellino v. District 20 of the NY City Dept. of Educ., No. 03 Civ 5942 (PKC), 2006 WL 2583019, at *8 (S.D.N.Y. Sept. 6, 2006), aff'd sub nom. Papsmiris v. District 20 of the NY City Dept. of Educ., 299 Fed. Appx. 97 (2d Cir.) & Masukopf v. District 20 of the NY City Dept. of Educ., 299 Fed. Appx. 100 (2d Cir. 2008).

Therefore, as to the events prior to December 9, 2005, with respect to plaintiff's quid pro quo claims under Title VII, evidence may be introduced only as "relevant background evidence" upon which plaintiff shall not dwell at trial. Although the Court recognizes that pre-December 9, 2005 evidence may be introduced with respect to plaintiff's hostile environment claim under Title VII, given Smith's nine-month absence from June 2004 until March 2005, and given plaintiff's allegations that he resisted Smith's alleged advances upon his supervisor's return from Dubai (Dkt. #63, ¶ 12), the pre-December 9, 2005 evidence shall be given secondary consideration to the events that transpired after that date.

With respect to the period of December 9, 2005 and October 5, 2006, defendant is incorrect in its assertion that the only sexual acts of which plaintiff complains in his administrative complaint filed with CHRO are from 2002 through mid-2005. As plaintiff points out, the cover sheet of his administrative complaint with CHRO, plaintiff alleges sex harassment "on or about 2003-June 2006[.]" With respect to the March 2006 and May 2006 incidents described in the Amended Complaint (Dkt. #63, ¶¶ 13, 15) but not mentioned in plaintiff's administrative complaint, plaintiff is correct that the Second Circuit has held that "claims that were not asserted before the EEOC may be pursued in a subsequent federal

---

[20]In a footnote, Judge Meskill cautioned that the district court always retains discretion to determine whether such evidence ought to be admitted under FED. R. EVID. 401, 403. Id. at 177, n.7, citing, inter alia, Malarkey v. Texaco, Inc., 983 F.2d 1204, 1211 (2d Cir. 1993).

court action if they are 'reasonably related' to those that were filed with the agency." Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001)(citations omitted)(per curiam).  In Legnani, the Second Circuit held that a claim alleging retaliation by an employer against an employee for filing a discrimination charge was "reasonably related" to the underlying discrimination charge.  Id. at 686-87.  In this case, the allegations in plaintiff's administrative complaint before CHRO are virtually identical to the Amended Complaint (compare Dkt. #142, Exh. C, ¶¶ 4-12, 14, 16  with Dkt. #63, ¶¶ 5-11, 14, 16), except that the administrative complaint did not include the allegations regarding Smith's absence during June 2004 through March 2005, and the two incidents in late March 2006 and early May 2006.  (Dkt. #63, ¶¶ 12-15).  Although the "reasonable relat[ionship]" is not as obvious here as in Legnani, it does, however, flow from the continuum of events that began in 2002, and thus the Court will allow plaintiff to introduce evidence with respect to the period of December 9, 2005 and October 5, 2006, and in particular, the late March 2006 and early May 2006 events.

The same holds true with respect to the time period subsequent to October 5, 2006, although it is not clear that any such events are relevant, given plaintiff is not seeking any damages beyond May 8, 2006.[21]

Therefore, defendant's Motion In Limine re: Acts for Which Plaintiff Has Failed to Exhaust his Administrative Remedies (Dkt. #142) is denied in large part to the extent set forth above.

### 3.  DEFENDANT'S MOTION IN LIMINE RE: UNPROVEN ALLEGATIONS AND CLAIMS (DKT. #135)

In this motion, defendant seeks to prohibit any documentary or testimonial evidence

---

[21]See note 18 supra.

of "other untested allegations or claims against . . . [d]efendant regarding employment discrimination or hostile work environment[,]" in that no employee other than plaintiff has made complaints against Smith, nor has plaintiff or his union, the UConn Professional Employees Association, filed any grievance regarding him.  (Dkt. #135, at 1-2 & Exh. A). Specifically, plaintiff has identified five DISP employees as fact witnesses "who will testify about [the] work environment and what they observed regarding the allegations of the complaint[,]" and none of them has brought any complaints against defendant; defendant seeks to bar them from "air[ing] any of their personal grievances in this trial. . . . " (Id. at 2, 3).  Second, defendant seeks to bar any evidence with respect to a federal lawsuit brought by an African-American employee against defendant, which included allegations of mistreatment by both plaintiff and Smith, and which was settled in the U.S. District Court in Hartford in 2008.  (Id. at 2-3).  Defendant argues that this evidence is all excluded under FED. R. EVID.  403, 408 and 801(d).  (Id. at 3-4).

In his brief in opposition, plaintiff argues that these five witnesses should be able to testify as to their observations of the interactions between plaintiff and Smith, as well as their personal experiences "as a subordinate of Smith, consistent with claims made [by] plaintiff regarding, for example, Smith's ability to control subordinates, and the fear employees had if they were to speak out against him."  (Dkt. #154, at 1).  Plaintiff argues that the observations or experiences of these five employees are admissible as motive or intent under FED. R. EVID. 404(b).  (Id. at 2).[22]

It is clear that the five witnesses may testify as to their personal observations of the

---

[22]Plaintiff's brief does not address the settlement so that the Court assumes that plaintiff does not object to that portion of defendant's motion.

interactions between plaintiff and Smith.[23]   The more significant issue, then, is the extent to which these five witnesses may testify as to their own experiences with Smith; the testimony of current or former co-workers in this context is sometimes referred to as "me too" evidence.   See, e.g., Griffin v. Finkbeiner, 689 F.3d 584, 597-600 (6th Cir. 2012); Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1285-87  (11th Cir.), reh. denied en banc, 278 Fed. Appx. (11th Cir.  2008); Gaffney v. Dept. of Info. Tech. & Telecommunications, 579 F. Supp. 2d 455, 459-60 (S.D.N.Y. 2008).  As the District Judge observed in a case alleging, inter alia, race discrimination and retaliation under Title VII: "[I]t is well established in the Second Circuit that one way to establish retaliation is to demonstrate that other people who have participated in protected activity have been treated adversely and similarly to plaintiffs." Gaffney, 579 F. Supp. 2d at 460 (citations omitted). The judge cautioned, however, that "[i]nsofar as portions of . . . prospective testimony may potentially go beyond the scope of what is permissible," with regard to claims that may differ substantially from those of plaintiffs, then "the Court can address specific objections on a case-by-case basis, and give the jury an appropriate limiting instruction as to the purpose for which the testimony is being

---

[23]These five witnesses are Beth Fletcher, Tanya Wiggins, Laurie Tompkin, Robert Chudy and Suzanne Atrens.  (Dkt. #135, at 2).   These five individuals also appear on plaintiff's witness list in the parties' Joint Trial Memorandum, filed May 3, 2013 (although in the JTM, Chudy is spelled Choudy).  (Dkt. #151, at 1-2).

In the Findings and Recommendations, dated October 24, 2006, by defendant's Office of Diversity and Equity ["ODE"], with respect to plaintiff's administrative complaint, ODE Field #C-06-34, Wiggins is mentioned by plaintiff as someone who "[o]nce . . . walked in[]" on plaintiff and Smith during an intimate moment.  (ODE Report at 13).  Atrens is also identified in "Facts Not in Dispute" as having supervised plaintiff from May 1, 2005 through April 30, 2006 and an e-mail from her, dated February 16, 2006 was attached as part of Exh. FF (Id. at 23, 24, ¶ 4). Wiggins also filed a sworn affidavit, dated June 30, 2006, attached to the report as Exh. GG.   Nine DISP employees were also interviewed and are identified as Witnesses A through I in the report.  (Id. at 15-22).

The ODE Report is the subject of another motion, Dkt. #150, and is addressed in the next section, Section I.B.1. infra.

admitted." Id. See also Griffin, 689 F.3d at 597-600 (reversing jury verdict for defendants in Title VII action for race discrimination and retaliation where the District Judge excluded "me too" evidence with respect to retaliation).

The Eleventh Circuit addressed this issue extensively in Goldsmith, where the jury had awarded plaintiff compensatory and punitive damages based on racial discrimination and retaliation under Title VII. 513 F.3d at 1267. Among the many issues raised by the defendant-employer on appeal was whether the district court had abused its discretion when it admitted the "me too" testimony of plaintiff's coworkers with respect to discrimination against them by defendant. Id. at 1285. The Eleventh Circuit explicitly held that "this 'me too' evidence was . . . admissible to support [plaintiff's] claim of a hostile work environment[,]" not under FED. R. EVID. 406 as "conduct of [an] organization"[24] but rather under FED. R. EVID. 404(b), "to prove the intent [of defendant] to discriminate and retaliate[,]" especially when plaintiff and two coworkers were discriminated against by the same supervisor and the same Vice President was involved in the termination decisions for plaintiff and three other employees. Id. at 1285-86. The Eleventh Circuit continued:

> [Plaintiff's] "me too" evidence was also admissible, under Rule 402, as relevant to his claim of a hostile work environment. . . . [I]n some cases, this testimony goes directly to the issue of racial harassment on the job. The evidence about [the three other coworkers] established the recurrent use of racial slurs by employees of [defendant] and proved that any black employee who complained about racial discrimination was treated differently by supervisors and was ultimately terminated. This evidence supported [plaintiff's] claim that [defendant] permitted a severe and pervasive

---

[24]The Eleventh Circuit held that plaintiff's "offered evidence of only four responses of [defendant] to complaints of racial discrimination . . . are not numerous enough to support an inference that [defendant] systematically terminated any black employee who complained about discrimination." Id. at 1285 (citation omitted). In addition, there were substantial differences in the terminations, including the nature of the underlying complaints, whether complaints had been filed with the EEOC, and different decision-makers. Id. at 1285-86. As the Eleventh Circuit concluded, "In sum, the 'me too' evidence was marked by a variety of responses to different situations involving only four black employees." Id. at 1286.

atmosphere of racial discrimination on its premises.

Id. at 1286 (citation & internal quotations omitted).

Just three months ago, the Goldsmith case was analyzed in Andazola v. Logan's Roadhouse, Inc., No. CV-10-S-316-NW, 2013 WL 2355350 (N.D. Ala. May 24, 2013), wherein the plaintiff commenced a lawsuit, inter alia, for sex harassment, sex discrimination and retaliation under Title VII.  Id. at *1.  The District Judge observed that the Goldsmith decision notwithstanding, "more often than not, 'me too' evidence is not admitted at trial . . . " under FED. R. EVID. 403, and "trial courts regularly prohibit 'me too' evidence from or about other employees who claim discriminatory treatment because it is highly prejudicial and only slightly relevant." Id. at *2 (multiple citations omitted).  In ruling upon defendant's motion in limine, the District Judge in Andazola permitted the testimony of plaintiff's coworker who experienced identical sexual harassment from the same supervisor, id. at *3-5, but plaintiff was not permitted to testify about the experiences of two additional coworkers who apparently were not going to testify.  Id. at *5-6.

The United States Supreme Court held in Sprint/United Mgmt. v. Mendelsohn, 552 U.S. 379 (2008)["Mendelsohn"], an action filed under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., that testimony by plaintiff's coworkers regarding discrimination by the defendant-employer's supervisors "is neither per se admissible nor per se inadmissible." Id. at 380-81.  Instead, "[t]he question of whether evidence of discrimination by other supervisors is relevant . . . is fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." Id. at 388.   The Mendelsohn decision was addressed briefly in DeMarco v. West Hills Montessori, 350 Fed. Appx. 592 (2d Cir. 2009), where the Second Circuit held that the "harassment experienced by other employees is relevant to hostile work environment claims,

but the evidence must be firsthand accounts of the events in question[,]" and while plaintiff "was certainly entitled to put witnesses on the stand and elicit testimony of their experiences with harassment to support her claim[,] . . . she was not entitled to testify as to what she heard from these employees in order to prove a hostile work environment, as the district court properly concluded." Id. at 594.

In this case, the Court is lacking information regarding what testimony plaintiff intends to proffer from these five witnesses.   Far more information will be required before any definitive ruling can be made, other than the broad pronouncements that the experiences of the other coworkers must be substantially similar to that of plaintiff – that is, quid pro quo sexual harassment or hostile work environment by Smith during the relevant time period.   Contrary to plaintiff's arguments, however, "Smith's ability to control subordinates, and the fear employees had if they were to speak out against him[]" (Dkt. #154, at 1) is no longer relevant, in that plaintiff's retaliation claim was dismissed by Judge Eginton.[25]

**A supplemental briefing schedule will be set for this issue once dates have been set for jury selection and trial**.

Accordingly, Defendant's Motion In Limine re: Unproved Allegations and Claims, filed April 15, 2013 (Dkt. #135) is denied in large part to the extent set forth above.

---

[25]For example, it would be helpful to know if these five witnesses were interviewed as Witnesses A through I in the ODE Report, see note 23 supra, and if so, to identify the witnesses, at least to the Court in camera.  Once that is done, if need be, the Court will rule on the proffered testimony, paragraph by paragraph, or sentence by sentence.

B. THREE MOTIONS REGARDING THE IMPACT, IF ANY, OF THREE SEPARATE ADMINISTRATIVE PROCEEDINGS

1. PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE TESTIMONY REFUTING THE FINDINGS OF THE OFFICE OF DIVERSITY AND EQUITY REPORT (DKT. #150)

On May 3, 2013, plaintiff filed his Motion In Limine to Exclude Testimony Refuting the Findings of the Office of Diversity and Equity Report (Dkt. #150), attached to which is Findings and Recommendations, dated October 24, 2006, by defendant's Office of Diversity and Equity ["ODE"], with respect to plaintiff's administrative complaint, ODE Field #C-06-34, filed under seal. (Dkts. ##150, 155-57). According to plaintiff, the ODE Report is an admission under FED. R. EVID. 801(d)(2)(B) and is an exception to the hearsay rule under FED. R. EVID. 803(8)(A)(iii) as factual findings from a legally authorized investigation.[26] (Dkt. #150, Brief at 1, 3). Plaintiff requests that the Court enter judgment for plaintiff based upon defendant's admission in the ODE Report that "[t]he weight of witness statements, emails, documentation, and one coincidence too many, support a finding that the Respondent [Smith] sexually harassed (quid pro quo and hostile environment) the Complainant [Doe]." (ODE Report at 32). Plaintiff further argues that because Smith was allowed to resign while his appeal of the ODE Report was pending, the decision "stands as final[]" and thus "is conclusive on the issue of whether or not plaintiff was sexually harassed." (Dkt. #150, Brief at 2, 4). And because, according to plaintiff, Judge Eginton has ruled that defendant is strictly liable for Smith's conduct, judgment should enter for plaintiff on the issue of liability. (Id. at 1, 4).

_____

[26]Rule 803(8) excludes from the hearsay rule "[p]ublic [r]ecords[,]" defined, inter alia, as "[a] record or statement of a public office if . . . (A) it sets out . . . (iii) in a civil case . . ., factual findings from a legally authorized investigation; and (B) neither the source of information nor other circumstances indicate a lack of trustworthiness."

In its brief in opposition, defendant argues that:  ODE had limited statutory authority and the ODE Report is "preliminary" in nature (Dkt. #168, at 2-6); the ODE Report should be excluded under FED. R. EVID. 403 (id. at 7-8); the statements made to ODE are inadmissible hearing under FED. R. EVID.  801(c) (id. at 8-9); the ODE Report contains "multiple levels of hearsay" (id. at 12-13); the notes/e-mails attached to the ODE Report are not admissible (id. at 13-14); the notes/e-mails attached to the ODE Report have not been authenticated (id. at 14); the records exception under FED. R. EVID.  803(8) does not apply to the ODE Report (id. at 15-20); the ODE Report will complicate and prolong the trial (id. at 20-21); and the ODE Report cannot substitute for credible evidence (id. at 21-22).[27]

As set forth by defendant (Dkt. #168, at 2-3), under CONN. GEN. STAT. § 46a-68(b)(1), "each state agency, department, board or commission must designate an equal employment opportunity officer[,]" whose responsibilities include "report[ing] all findings and recommendations upon the conclusion of an investigation [of complaints of discrimination] to the commissioner or director of the state agency, department, board or commission for proper action." CONN. GEN. STAT. § 46a-68(b)(4)(A)(iii).   In this case, Dana R. McGee was the Director of ODE at the time, and both sides have listed her as a witness in this case.  (Dkt. #168, at 3, n.1; Dkt. #151, at 2-3).   At the time, President Philip Austin was the President of defendant, to whom McGee was to "report . . . for proper action[,]" which included accepting the recommendations, rejecting the recommendations, or ordering a new or further investigation.  (Dkt. #168, at 3, 5-6).  As previously mentioned, although Smith took an "immediate[] appeal[]" of the ODE Report, Smith resigned from defendant while the

---

[27]In its brief in opposition, defendant also affirmatively requests that the Court exclude any testimony or evidence from Tanya Cleveland Wiggins. (Id. at 9-12, 22).   Wiggins' testimony will be addressed following the supplemental filings required under Section I.A.3 supra.

appeal was pending and President Austin himself resigned the next month (for unrelated reasons) without taking any action on the report.  (Id. at 5-6 & nn.5-6).

This issue was touched upon briefly by the Second Circuit in Albert v. New York City School Construction Auth., 99 Fed. Appx. 306 (2d Cir. 2004), a Title VII case, where defendant had moved in limine prior to the jury trial to exclude a "preliminary" report prepared by defendant's Equal Employment Opportunity ["EEO"] officer, which report contained alleged statistical disparities in promotion.  Id. at 309.  The District Judge held that while witnesses could refer to the report, the report itself would not be admitted at trial, nor would there by any evidence regarding events that preceded the statute of limitations.  Id. On appeal by plaintiffs, the Second Circuit held that the trial court "was well within its discretion to exclude the report given the prejudicial impact and its tendency to confuse the jury, compared to the report's low probative value[,]" in that the data contained therein was "incomplete" for the race of some applicants, and three of the years as well as one quarter of the available positions occurred prior to the statute of limitations.  Id. at 309-10.

This issue was addressed in more detail in Hamilton v. Missouri Dept. of Corr., No. 08-3277-CV-S-MJW, 2011 WL 1309464 (W.D. Mo. Apr. 4, 2011), a Title VII retaliation case, in which U.S. Magistrate Judge Matt J. Whitworth excluded admission of "lengthy investigative report[s]" prepared by defendant's Human Resources ["HR"] Officer; this evidentiary ruling, among others, was raised in plaintiff's Motion for a New Trial, following a jury verdict in favor of defendants.  Id. at *1-2.  Magistrate Judge Whitworth had allowed this HR Officer "to testify about how she conducted her investigation, whom she interviewed, the conclusions she reached, and the actions she took upon the completion of her investigation."  Id. at *2.  The two reports were excluded because "they were replete with hearsay statements of witnesses who were not going to be called to testify at trial[,]" and

they "contained multiple layers of inadmissible hearsay and improper opinions."  Id.   The Magistrate Judge held that these reports were not admissible under Rule 803(8)[28] because "[t]he Human Resources Division of the Missouri Department of Corrections where [the HR officer] worked does not have authority granted by law to conduct investigations into employee grievances."  Id.[29]  Magistrate Judge Whitworth also held that the "[u]nsworn statements to investigators [were] inadmissible double hearsay[,]" and admission of the reports would have been "unfair to defendant because there would have been no way for defense counsel to cross-examine the individuals who were the subjects of the interviews."  Id. (citations omitted).  Thus, Magistrate Judge Whitworth held that these investigation reports had been properly excluded.  Id. at *3.

A different analysis was taken, but with the same result, by the Seventh Circuit in Lewis v. City of Chicago Police Dept., 590 F.3d 427 (7th Cir. 2009), a Title VII action filed by a female police officer, where the defendant City had conducted an internal investigation, which had "actually exonerated" plaintiff's supervisor; plaintiff objected to the trial judge's exclusion of this evidence.  Id. at 441-42.   The Seventh Circuit held that the District Judge was correct that admitting this investigative report "would create a substantial risk that the jury would adopt the earlier conclusion[,]" particularly because the investigation "merely present[ed] the question the jury was tasked with answering. . . . [I]t could have confused the jury into thinking that the issue was already decided."  Id. at 442 (citation omitted).[30]

---

[28]See note 26 supra.

[29]A similar conclusion was reached, in a footnote, in Martin v. State University of New York, 704 F. Supp. 2d 202 (E.D.N.Y. 2010), in which Magistrate Judge Wall found that "the opinion of the campus Tripartite Committee[]" did not fall within the "public records and reports" exception of Rule 803(8).  Id. at 232, n.20 (citation omitted).

[30]In the context of a summary judgment motion, obviously to be considered by a judge, the District Judge gave more latitude to the admissibility of a memorandum prepared by

The opposite conclusion was reached in <u>Talavera v. Municipality of San Sebastian</u>, 865 F. Supp. 2d 150 (D.P.R. 2011), a Title VII case brought by female police officers, where the defendant-municipality had hired a law firm to "conduct an investigation and prepare findings[]" with respect to plaintiffs' allegations of sexual harassment.  <u>Id.</u> at 154.  The attorney's investigative report concluded that one of the defendants had in fact sexually harassed one of the plaintiffs, and recommended that the municipality's human resource director issue a written admonishment to this defendant, which was done, and the written admonishment became part of this officer's personnel file.  <u>Id.</u>  Defendants moved <u>in limine</u> to exclude this administrative ruling, which was denied because the report was found to be an admission of a party opponent under Rule 801(d)(2)(B), as argued by plaintiffs, in that the administrative ruling was "prepared by an independent third party at the behest of the [defendant] [m]unicipality, [and] was adopted by defendants when they followed the recommendation in the ruling to 'issue a written admonishment to [one of the] defendant[s] . . . .'"  <u>Id.</u> at 153-54, 155 (citation omitted).   The District Judge also rejected defendants' claims that the administrative ruling should be excluded at trial because its probative value was substantially outweighed by the danger of unfair prejudice under FED. R. EVID. 403, in that the issues raised in the report were "integral" to both plaintiffs' claims and defendants' defenses and "the probative value of the report is significant[.]"  <u>Id.</u> at 155-56.

Based upon these four decisions, this Magistrate Judge concludes that the ODE Report is not admissible under Rule 803(8) or Rule 403.  Unlike in <u>Hamilton</u>, McGee, the ODE

---

defendant's Diversity/EEO Program Manager, in <u>Ali v. District of Columbia Government</u>, 810 F. Supp. 2d 78, 82 (D.D.C. 2011), a Title VII lawsuit filed by a firefighter for alleged religious discrimination.   The District Judge rejected defendant's objection to consideration of this memorandum, finding that it was "an investigative report of a public agency" under Rule 803(8). <u>Id.</u> at 83, 84.  However, the District Judge agreed that he would not consider multiple exhibits to the report, including plaintiff's own statement and other hearsay statements, as they "contain inadmissible or incompetent material." <u>Id.</u> at 84.

Director, had statutory authority under CONN. GEN. STAT. § 46a-68(b)(4)(A)(iiii), to "report all findings and recommendations upon the conclusion of an investigation [of complaints of discrimination] to the commissioner or director of the state agency, department, board or commission for proper action."  But like in <u>Albert</u>, the report was "preliminary" only, in that both Smith and President Austin resigned before President Austin had an opportunity to consider the report, and then accept or reject the recommendations, or order a new or further investigation.

Moreover, even if the Court were to agree that the ODE Report falls within the ambit of a public record under Rule 803(8), the report is still inadmissible under Rule 403, for all the reasons set forth in the <u>Hamilton</u> and <u>Lewis</u> decisions – the report indeed is "replete with hearsay statements of witnesses who [are] not going to be called to testify at trial[,]" the report contains "multiple layers of inadmissible hearsay and improper opinions" and "inadmissible double hearsay[,]"[31] and its admission "could . . . confuse[] the jury into thinking that the issue was already decided[,]" despite an appropriate limiting instruction to the contrary.  However, as in <u>Albert</u> and <u>Hamilton</u>, McGee is free to testify about how she conducted her investigation, whom she interviewed, the conclusions she reached, and the actions she took upon the completion of her investigation, and other witnesses may refer to the ODE Report, as appropriate.

While the ODE Report may well be an admission of a party-opponent under Rule 801(d)(2)(B), particularly since, like in <u>Talavera</u>, defendant adopted some of its recommendations in terminating Smith's employment, the significant concerns just

---

[31]As discussed in Section III.A.3 <u>supra</u>, not all the witnesses interviewed by ODE are going to testify at trial, and their statements do contain "multiple layers of inadmissible hearing and improper opinions" as well as "inadmisslbe double hearsay."  (<u>See</u> ODE Report at 15-22).

articulated with respect to Rule 403 dictate that the ODE Report be excluded, absent compelling circumstances that could arise at trial to the contrary.  Again, McGee will be given substantial rein in her testimony about the ODE Report (as long as improper hearsay is omitted), so that the jury will be fully informed as to what transpired at the ODE.  However, the jury will be denied access to the multiple layers of hearsay and unsworn statements that appear in the report.

Accordingly, plaintiff's Motion <u>In Limine</u> to Exclude Testimony Refuting the Findings of the Office of Diversity and Equity Report (Dkt. #150) is <u>denied</u>.

<u>2.   PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE CHRO DISMISSAL (DKT. #152)</u>

In somewhat of a role reversal with respect to Section I.B.1 <u>supra</u>, in this motion, plaintiff moves to preclude evidence regarding the dismissal of plaintiff's claims by CHRO. (Dkt. #152).  Echoing the arguments made by defendant regarding the prior motion, plaintiff argues that the investigation by CHRO "was not thorough and did not include an interview of plaintiff[,]" and that under Rule 403, the probable value is substantially outweighed by the danger of unfair prejudice, confusion of the issues and undue delay.    (Dkt. #152, at 1 & Brief, at 2-3).

In its brief in opposition, defendant argues that the CHRO finding of no reasonable cause following its investigation of the charges of sexual harassment should be admitted over plaintiff's objection, and moreover, that it is "a business record" in that it is "the final report of [an] anti-discrimination agency[]" under Rules 801(d)(2)(C) & (D).  (Dkt. #168, at 22-23).

In <u>Chandler v. Roudebush</u>, 425 U.S. 840 (1976), the U.S. Supreme Court noted, in passing, that in a Title VII lawsuit, "[p]rior administrative findings made respect to an employment discrimination claim may, of course, be admitted as evidence at a federal-sector

trial <u>de novo</u>."  <u>Id.</u> at 863, n.39 (citations omitted).  In <u>Paolitto v. John Brown E. &C., Inc.,</u>
151 F.3d 60 (2d Cir. 1998), an action filed under the ADEA, U.S. District Judge Gerard L.
Goettel had excluded from evidence CHRO's finding that plaintiff's evidence of age
discrimination was "insufficient."  <u>Id.</u> at 62.  Upon appeal after a jury verdict in plaintiff's
favor, defendant argued that the CHRO findings should have been "admitted as a matter of
law," with which the Second Circuit "disagree[d]."  <u>Id.</u> at 62, 64. As defense counsel has
appropriately observed (Dkt. #168, at 22-23), consistent with the case law in an
overwhelming majority of Courts of Appeals with respect to Title VII, former Chief Judge
Ralph K. Winter held that despite the potential admissibility of CHRO findings under Rule
803(8),

> the fact that evidence is within an exception to the hearsay rule does not by
> itself make it admissible <u>per se</u>.  The district court generally has discretion to
> exclude such hearsay on other grounds, such as where the evidence's
> probative value is substantially outweighed by the danger of unfair prejudice
> [under Rule 403].

<u>Id.</u> at 64 (citation omitted).  Judge Winter specifically rejected the <u>per se</u> rule of admissibility
of the Fifth and Ninth Circuits, and instead adopted the holdings of the Third, Seventh,
Eighth, Tenth and Eleventh Circuits that leave "the question of whether to admit EEOC or
state-agency findings to the sound discretion of the district court."  <u>Id.</u> at 64-65 (multiple
citations omitted).  Judge Winter quoted with approval from the Eighth Circuit that
"employment-agency determinations 'are not homogenous products; they vary greatly in
quality and factual detail[,]'" and further that the party against whom such a report is
admitted must then "attempt to expose the weaknesses of the report, an effort that may well
confuse or mislead the jury and result in an undue waste of time."   <u>Id.</u>  at 65 (citations
omitted).  The Second Circuit thus concluded:

> We believe that the district court is in the best position to consider the quality

31

of the report, its potential impact on the jury, and the likelihood that the trial
will deteriorate into a protracted and unproductive struggle over how the
evidence admitted at trial compared to the evidence considered by the
agency.

Id. (citation omitted).   The Second Circuit agreed with Judge Goettel that the CHRO

determination should have been excluded because the evidence plaintiff presented at trial

"undercut many of the . . . factual findings" and defendant "had a full opportunity to present

to the jury all the evidence it had submitted to . . . CHRO."   Id. at 65.[32]

Four years later, U.S. District Judge Janet C. Hall issued her decision in Keene v.

Hartford Hosp., 208 F. Supp. 2d 238 (D. Conn. 2002), filed under Title VII, where CHRO had

found reasonable cause for plaintiff's complaint.   Id. at 240, 241.   Defendant moved to strike

several exhibits filed by plaintiff in opposing defendant's motion for summary judgment,

including the reasonable cause determination by CHRO.   Id. at 242.   Relying upon Paolitto

and other decisions, Judge Hall found that CHRO's factual findings "f[e]ll within the ambit of

the public records exception" to the hearsay rule.   Id. (citations omitted).    Judge Hall

continued:

In assessing trustworthiness, the court considers (1) the timeliness of the
investigation; (2) the special skill or experience of the official; (3) whether a
hearing was held and the level at which [it was] conducted; and (4) any
motive of the investigator inconsistent with accuracy.  The court may consider
other factors, including the finality of the report or record as an official
finding.  Ultimately, the court has the discretion to determine whether the
hearsay document offered in evidence has sufficient independent indicia of
reliability to justify its admission.

Id. at 243 (multiple citations, quotations & alterations omitted).   Judge Hall did not consider

---

[32]Back in 1986, then Chief Judge T.F. Gilroy Daly ruled, in a bench trial under Title VII, that
"absent some evidence of untrustworthiness, it cannot be denied that the EEOC 'no reasonable
cause determination' provides some evidence that plaintiff's allegation of not receiving equal pay
for equal work is without merit." Leveen v. Stratford Housing Auth., 629 F. Supp. 228, 229, 230-
31, 233  (D. Conn. 1986).  Obviously, Rule 403 considerations are not as critical in a bench trial as
they are in a jury trial.

the CHRO report, because it was a "preliminary investigation into whether discrimination <u>could</u> have occurred[,]" and "[t]he findings and determination were subject to a final review and hearing by a CHRO Hearing Officer."  <u>Id.</u> (emphasis in original).

Senior U.S. District Judge Ellen Bree Burns reached the same conclusion two years later in <u>Barlow v. State of Connecticut</u>, 319 F. Supp. 250 (D. Conn. 2004), <u>aff'd on other grounds</u>, 148 Fed. Appx. 31 (2d Cir. 2005), also a Title VII case, again in the context of defendant's summary judgment motion.  <u>Id.</u> at 254.   Like in <u>Keene</u>, defendants moved to strike CHRO's finding of reasonable cause, and like in <u>Keene</u>, Judge Burns found that the CHRO document was only "a preliminary investigation into whether discrimination or retaliatory conduct against plaintiff could have occurred[,]" and the CHRO investigator's conclusions were "based largely on unreliable hearsay, and what plaintiff stated."  <u>Id.</u>  As the reasonable cause determination had "little probative value" and "all the same evidence" was before the Court, the motion to strike was granted.  <u>Id.</u>

U.S. Magistrate Judge Holly B. Fitzsimmons also relied on <u>Keene</u>, four years after <u>Barlow</u>, with respect to a motion <u>in limine</u> prior to a jury trial in a Title VII case.  <u>Adams v. Yale-New Haven Hosp.</u>, No. 3:06 CV 1166 (HBF), 2008 WL 358644, at *1, 3 (D. Conn. Feb. 8, 2008).  In <u>Adams</u>, CHRO made a determination that there was "reasonable cause" to permit plaintiff to proceed to a public hearing, but plaintiff declined to do so and instead requested a release of jurisdiction to file her lawsuit, so that CHRO made no further findings. <u>Id.</u> at *3.  Again, because no witnesses had been called, and because a final determination had not been made by CHRO that discrimination occurred, defendant's motion was granted. <u>Id.</u> at *4.  Magistrate Judge Fitzsimmons ruled that "[a]t trial, the parties will be able to introduce all relevant evidence, whether or not it was considered by . . . CHRO, including an opportunity to question and cross examine live witnesses."  <u>Id.</u> at *4.

The same conclusion has been reached in the district courts in New York as well, where determinations by the EEOC or New York State Division of Human Rights ["NYSDHR"] have been excluded.  See, e.g., Dollman v. Mast Indust., Inc., No. 08 Civ. 10184 (WHP), 2011 WL 3911035, at *1 (S.D.N.Y. Sept. 6, 2011)(granting defendant's motion in limine to exclude probable cause finding by NYSDHR, based upon Paolitto, particularly because the differing burdens of proof before the NYSDHR and the federal court "raise[] the considerable possibility of jury confusion and the prospect that the trial will devolve into countless mini-trials over the adequacy and accuracy of the NYSDHR [d]etermination.")(citation omitted); Cook v. Hatch Assoc., No. 02-CV-0065(A), 2007 WL 1267023, at *1-3 (W.D.N.Y. Apr. 30, 2007)(granting plaintiff's motion in limine to exclude finding of no probable cause by EEOC, based upon Paolitto, particularly because it was not clear what evidence was presented before the EEOC or considered by it, the EEOC did not interview any witnesses as part of its fact-finding inquiry, the EEOC's determination letter "contains only conclusory findings that fail to describe the nature of its investigation or the basis for its conclusions[,]" and the EEOC complaint included charges for age discrimination that were dismissed in a prior summary judgment ruling before the Court, so that the introduction of the EEOC's determination "would needlessly interject irrelevant issues and likely lead to confusion by the jury.")(citations omitted); Dodson v. CBS Broadcasting Inc., 423 F. Supp. 2d 331, 334-35 (S.D.N.Y. 2006)(granting defendant's motion in limine to exclude finding of probable cause and violation by EEOC, based upon Paolitto, for all the same reasons).

In contrast, in Watson v. E.S. Sutton, Inc., No. 02 Civ. 2739 (KMW), 2005 WL 2170659 (S.D.N.Y. Sept. 6, 2005), aff'd on other grounds, 235 Fed. Appx. 3 (2d Cir. 2006), during the nine-day jury trial for retaliation under Title VII, which resulted in a $4.4 million verdict for plaintiff, the trial judge admitted the EEOC's determination of probable cause.

Id. at *1, 7, 21-22.   This evidentiary ruling was one of several raised by defendant in its motion for new trial.   Id. at *1, 21-22.   Relying upon Paolitto, the trial judge held that the EEOC report was "well substantiated by the evidence at trial, and bore sufficient indicia of reliability" to be admissible under Rule 803(8), defendant did not object to much of this evidence and thus its objection was "effectively waived[,]" any error in admitting the report was harmless because this one error would be "likely lost in the sea of the facts before the jury and far overwhelmed by the testimonial evidence from both sides[,]" and "the jury was appropriately instructed as to the limited purpose of these materials."   Id. at *21 (citations omitted).

While the overwhelming majority of these cases concerned a defendant-employer's attempt to exclude the EEOC's or a state agency's finding of probable cause or finding of a violation, the conclusion does not differ when, as in this case, a plaintiff-employee seeks to exclude a finding of no probable cause.   Kirby v. J.C. Penney Corp., Inc., No. 2:08-cv-1088, 2009 WL 3572494, at *1-2 (W.D. Pa. Oct. 26, 2009); L'Etoile v. New England Finish Sys., Inc., 575 F. Supp. 2d 331, 333-34 (D.N.H. 2008); Cook, 2007 WL 1267023, at *1-3.   In granting plaintiff's motion in limine, and in applying Rule 803(8), the District Judge in Kirby held that he

> fail[ed] to see how what is essentially a non-decision on the part of the EEOC demonstrates any tendency to make the existence of a fact of consequence to the determination of this action more or less probable than it would be without the evidence. . . . A jury could easily confuse the meaning of the document as suggestive of the jury's ultimate legal question.

2009 WL 3572494, at *2.   In granting a similar motion in L'Etoile, the District Judge found that the finding of no probable cause by the EEOC and the New Hampshire Human Rights Commission offered no "explanation of why or how the agenc[ies] reached that conclusion, giving the findings little probative value."   575 F. Supp. 2d at 334.

Thus, under the Second Circuit's decision in <u>Paolitto</u>, 151 F.3d at 64-65, as well as the well-reasoned decisions from this district, the districts in New York, and the <u>Kirby</u> and <u>L'Etoile</u> decisions, which analyze the same issue, this Court will exercise its sound discretion and exclude the CHRO finding of no probable cause.   Plaintiff's Motion <u>In Limine</u> to Exclude CHRO Dismissal (Dkt. #152) is therefore <u>granted</u>.

### 3.  PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE TESTIMONY REGARDING TERMINATION OF EMPLOYMENT OR SOCIAL SECURITY DISABILITY BENEFITS (DKT. #153)

In this motion, plaintiff seeks to preclude testimony regarding the reasons for or the fact that he was terminated from defendant, and to further preclude evidence regarding his application for and receipt of disability benefits.  (Dkt. #153).  Plaintiff represents that as a result of his second conviction, he was terminated from his employment and placed on a sex offender registry, that he has been unable to obtain employment as a result, and that he began to collect Social Security disability benefits "some time after his termination in March, 2008, and continues to do so."  (Dkt. #153, Brief at 2).  Plaintiff reiterated that he does not seek back or front pay, but only compensatory damages for sexual harassment.   (<u>Id.</u>).  Plaintiff argues that evidence regarding his termination or receipt of disability benefits is not relevant under Rule 401, and that the probative value of this evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues and undue delay.  (<u>Id.</u> at 2-3).

In its brief in opposition, defendant argues that plaintiff's termination is admissible because it relates to plaintiff's credibility (Dkt. #168, at 23-24).  Defendant further argues that the Social Security benefits also relate to plaintiff's credibility, that plaintiff specifically mentioned applying for Social Security benefits in his Amended Complaint (Dkt. #63, ¶ 12), that plaintiff first applied for Social Security disability benefits in 1991 or 1993 (long before

36

he started to work for defendant), that he began treatment for panic and anxiety disorders in 1998 (prior to working for defendant), that he has collected Social Security disability benefits "off and on" during the relevant time periods, and that "[s]ince . . . [p]laintiff has put his mental state at issue in seeking damages for mental health problems alleged[ly] cause by this harassment, . . . [d]efendant must be permitted to inquire regarding the causation of . . . [p]laintiff's problems . . . ."  (Dkt. #168, at 24-25).[33]

Defendant is correct that plaintiff put his mental state at issue in seeking damages for mental heath problems allegedly due by Smith's harassment, and as such, defendant is entitled to cross-examine plaintiff, and put on its own evidence, with respect to any emotional difficulties plaintiff experienced prior to or during his employment at defendant.[34] Therefore, plaintiff's Motion In Limine to Exclude Testimony Regarding Social Security Disability Benefits (Dkt. #153) is denied.

C.  MOTIONS REGARDING PLAINTIFF'S CRIMINAL PROSECUTIONS

1. PLAINTIFF'S MOTION IN LIMINE  TO EXCLUDE EVIDENCE OF PLAINTIFF'S ARRESTS AND ALFORD  PLEA (DKT. #149)

As previously indicated, plaintiff has been arrested twice, the first on May 5-6, 2006 following a social event at a local restaurant, when plaintiff was accused of threatening Smith with a knife and gun, allegedly after being provoked by Smith; as a result of this arrest,

_____

[33]The discussion of plaintiff's termination will be addressed in the next section, Section I.C.1 infra.

In its brief in opposition, defendant adds that plaintiff should be precluded from offering any evidence with respect to the retaliation claim dismissed on summary judgment by Judge Eginton.  (Dkt. #168, at 26).  It goes without saying that because retaliation is no longer part of this lawsuit, both parties are precluded from offering any evidence on that topic. Redd v. N.Y. State Div. of Parole, No. 07-CV-120(NGG)(LB), 2013 WL 588233, at *9-11 (E.D.N.Y. Jan. 24, 2013).

[34]Because plaintiff is not seeking damages after May 8, 2006, see note 18 supra and text accompanying note 21 supra, any subsequent emotional difficulties after then are irrelevant.

plaintiff was suspended with pay from his employment for allegedly threatening his direct supervisor on university property. (Dkt. #63, ¶ 14; see also Dkt. #91, at 2). And as previously indicated, plaintiff pled nolo contendere to these charges on June 26, 2007, plaintiff does not seek damages from his three-week suspension following this event, and Judge Eginton dismissed all claims for retaliation. (Dkt. #91, at 2, 6-7).

And after Smith notified the authorities in July 2006, plaintiff was arrested on March 9, 2007, for illegal sexual contact with a minor, a felony, under CONN. GEN. STAT. § 53-21(2), with respect to sexual assaults upon Smith's minor daughter, Mary Smith; plaintiff pled guilty to these charges under the Alford doctrine on January 18, 2008. (See Dkt. #91, at 2; Dkt. #120, Exh. A, at 3, 7, 9-10; Dkts. ##28, 30).

In this pending motion, plaintiff seeks to exclude evidence regarding plaintiff's arrests and his guilty pleas. According to plaintiff, Smith pursued this latter charge in retaliation for plaintiff having filed the complaint with ODE, and the sexual contact at issue allegedly had occurred two years earlier, in 2004. (Dkt. #149, Brief at 1). Plaintiff further contends that through a mutual friend, Smith threatened to have plaintiff fired if plaintiff did not withdraw the ODE complaint, and "[n]ot wanting to risk incarceration," and lacking funds for an adequate legal defense, plaintiff pled guilty under the Alford doctrine, and received a suspended sentence and probation. (Id. at 1-2). Plaintiff argues that under Connecticut law and FED. R. EVID. 410, Alford pleas and pleas of nolo contendere are not admissible to prove the underlying conduct in a subsequent civil proceeding. (Id. at 2). He also argues that the evidence is irrelevant under Rule 401 (id.), and that it should be barred under Rule 403, as the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues and undue delay, even though the felony conviction would be otherwise admissible for impeachment purposes under FED. R. EVID. 609(a)(1). (Id. at 3). Plaintiff

38

further argues that the admission of this evidence will create a "mini-trial" within this case as to whether the allegation of child molestation was in retaliation for plaintiff's ODE complaint.  (Id.).[35]

In its brief in opposition, defendant argues that plaintiff's arrest for threatening, and his Alford guilty plea and conviction for child molestation "are highly relevant and probative of the issues in this case, including motive and credibility."  (Dkt. #167, at 2-3).  As defendant argues, well after the ODE concluded its investigation, plaintiff entered his Alford plea that triggered his termination, but that plaintiff's termination is not at issue in this case, rather "only his allegations of quid pro quo harassment and any emotional distress flowing therefrom." (Id. at 2-3 & n.2).   Defendant further argues that under Second Circuit law, the Alford plea is "not only . . . admissible at trial, but it has preclusive effect with respect to the charged facts of the crime." (Id. at 3-4).  Defendant further disputes that admission of these convictions will "necessitate[] a 'mini-trial' regarding plaintiff's innocence and/or the validity of his supervisor's allegations of child molestation. . . ."  (Id. at 4-5).

The parties agree that the critical decision on this issue is Burrell v. U.S., 384 F.3d 22 (2d Cir.), cert. denied, 543 U.S. 993 (2004).   Although a guilty plea under North Carolina v. Alford, 400 U.S. 25 (1970) is often considered the "functional equivalent" of a plea of nolo contendere, Second Circuit Judge Reena Raggi explained the nuanced distinction between the two as follows:

> A defendant entering an Alford plea voluntarily, knowingly, and understandingly consents to the imposition of a prison sentence even though he is unwilling or unable to admit his participation in the acts constituting the crime.  Frequently analogized to a plea of nolo contendere, an Alford plea

---

[35]Plaintiff correctly contends that this retaliation claim was originally in the case, "but was withdrawn by plaintiff to avoid the mini-trial that will occur should this evidence be admitted." (Id. at 3, n.1; see note 2 supra; Dkt. #62, at 4-5, 22-23; Dkts. ##59-60).

often asserts innocence whereas a nolo contendere plea refuses to admit guilt.

Burrell, 384 F.3d at 24, n.1 (internal quotations, alterations & citations omitted).   Judge

Raggi continued:

> In discussing Alford pleas, the Connecticut Supreme Court recently observed that a guilty plea under the Alford doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless.  At the same time, however, the court made plain that an Alford plea results in the defendant's conviction on the crime at issue to the same extent as any other guilty plea: The entry of a guilty plea under the Alford doctrine carries the same consequences as a standard plea of guilty.  By entering such a plea, a defendant may be able to avoid formally admitting guilt at the time of sentencing, but he nonetheless consents to being treated as if he were guilty with no assurances to the contrary.

Id. at 28 (internal quotations, alterations & citation omitted).  Thus, a defendant who enters

an Alford plea is subject to the same "severe penal consequences" as defendants who have

entered "standard guilty pleas" or who have been convicted after trial, just as a sentence

imposed an Alford plea is a "final judgment" just as in any other criminal case.  Id. at 28-29

(multiple citations omitted).   The latter is true even where, as in Burrell and here, a

defendant who entered a guilty plea under the Alford doctrine faces a term of probation

rather than a sentence of incarceration.  Id. at 29.   As the Second Circuit recognized,

"[T]here is no distinction among Alford, nolo contendere, and standard guilty pleas in the

disposition of criminal cases.  All three pleas have 'the weight of a final adjudication of guilt'

and thus, result in judgments of convictions."  Id. (citation omitted).

Judge Raggi pointed out, however, that there is a marked difference "in the

evidentiary use that can be made of these different pleas as admissions of factual guilt in

subsequent proceedings[,]" namely:

> A guilty plea under the Alford doctrine is the functional equivalent to an unconditional plea of nolo contendere which itself had the same legal

40

> effect as a plea of guilty on all further proceedings within the indictment.  The only practical difference is that the plea of nolo contendere may not be used against the defendant as an admission in a subsequent criminal or civil case.

Id. (multiple citations omitted).    The Second Circuit observed that Connecticut takes a position which is at variance with other jurisdictions, in that "'tacit admission' implicit in nolo contendere and Alford pleas [are] too 'inconclusive and ambiguous' to be given 'currency beyond the particular case' in which the plea was entered."   Id. at 30 (citation omitted).  Judge Raggi further observed: "Thus, Connecticut will not permit Alford or nolo contendere pleas to be used to impeach the credibility of a party opponent on disputed facts.  Nor may such pleas be used as evidence of acknowledged tortious conduct."  Id. (citation omitted).  Therefore, when "the relevant issue is simply the fact of a prior conviction, and not whether defendant admitted the charged criminal conduct," Connecticut's "admissions limitation" does not "limit the use of convictions based on Alford and nolo contendere pleas."  Id.   See also Northfield Ins. Co. v. Derma Clinic Inc., 440 F.3d 86, 92 (2d Cir. 2006)("Under Connecticut law, a prior plea of nolo contendere and a conviction based thereon may not be admitted into evidence in a subsequent civil action or administrative proceeding to establish either an admission of guilt or the fact of criminal conduct. . . . Furthermore, convictions based on nolo contendere pleas are not admissible . . . to affect the plaintiff's credibility or as evidence of acknowledged tortious conduct.")(internal quotations & multiple citations omitted)(Winter, C.J.).[36]

------

[36]The transcript from an Alford plea may be used to cross-examine a witness, on the grounds of prior inconsistent statement, when the convicted defendant testifies at another proceeding in a manner that contradicts his prior plea. State v. Simms, 14 Conn. App. 1 (App. Ct. 1988), aff'd, 211 Conn. 1, cert. denied, 493 U.S. 843 (1989).  In Simms, at his Alford plea, the witness Jones had denied his culpability in a particularly horrifying assault and robbery, but when he was called as a defense witness at Simms' trial, Jones testified that he alone was responsible, and not defendant Simms. 14 Conn. App. at 1-2.  The Appellate Court held that this was a proper way to attack Jones' credibility, id. at 3-5, with which holding the Connecticut Supreme Court agreed.

As previously indicated, defendant argues that plaintiff's arrest for threatening, and his Alford guilty plea and conviction for child molestation "are highly relevant and probative of the issues in this case, including motive and credibility." (Dkt. #167, at 2-3). The twisted chronology of events bears repeating here: (1) plaintiff was arrested on May 5-6, 2006 following an incident between him and Smith at a local restaurant; (2) plaintiff filed his sexual harassment complaint with ODE nearly two months later, on June 29-30, 2006;[37] (3) plaintiff was arrested on the sexual assault charges on March 9, 2007, some nine months later; (4) plaintiff pled nolo contendere to the assault charges three months thereafter, on June 26, 2007; and  (5) plaintiff pled guilty under the Alford doctrine to the sexual assault charges on January 18, 2008, some six months later.

Insofar as it is defendant that seeks to admit this evidence, then the focus of the inquiry must be upon plaintiff's motives, not those of defendant's actors.  Of these five events, the only one which plaintiff initiated is, of course, the filing of the sexual harassment complaint with ODE on June 29-30, 2006.  As a result, the events of May 5-6, 2006 are highly relevant on the issue of plaintiff's motive, but Judge Eginton has dismissed these retaliation charges and plaintiff is no longer seeking any damages with respect to that arrest and conviction, and his fifteen-day suspension that flowed therefrom.  Therefore, even if plaintiff filed the ODE complaint in late June 2006 with the intent of punishing Smith for having had him arrested in early May, those issues are no longer in this lawsuit, so that plaintiff's motive during the period of May-June 2006 is simply irrelevant.  Defendant cannot succeed in having the retaliation claim dismissed from the case on summary judgment, only

---

[37]Plaintiff's Amended Complaint alleges that the complaint was filed on or about June 29, 2006 (Dkt. #63, ¶ 16), while the ODE Report itself states that the complaint was filed on June 30, 2006.  (Dkt. #155, Exh. A, at 1).

to drag all the relevant facts back into jury trial on the issue of motive.

Moreover, even assuming arguendo that the Court were to consider Smith's motives in late 2006 and early 2007 in having had plaintiff arrested for the alleged sexual assault upon Mary Smith, plaintiff withdrew those claims, so that any alleged retribution by Smith against plaintiff after the end of June 2006, when the ODE claim was filed, is similarly irrelevant.[38]

In Burrell, the Second Circuit emphasized, relying upon Connecticut case law, that a plea of nolo contendere "may not be used against the defendant as an admission in a subsequent . . . civil case." 384 F.3d at 29 (citation omitted). The Second Circuit has made clear, in both Burrell, id. at 30, and in Northfield Ins., 440 F.3d at 92, that "Connecticut will not permit Alford or nolo contendere pleas to be used to impeach the credibility of a party opponent on disputed facts." (citations omitted). Thus, the January 2008 conviction also may not be used against plaintiff under these circumstances.

Therefore, plaintiff's Motion In Limine to Exclude Evidence of Plaintiff's Arrests and Alford Plea (Dkt. #149) is granted.[39] The same holds true with respect to the grounds for

---

[38]As plaintiff's counsel has confirmed in one of her many briefs, an alleged retaliation by Smith in lodging these criminal charges against plaintiff "is not part of the case against UConn." (Dkt. #138, at 2).

[39]The Magistrate Judge recognizes that omitting the May 2006 arrest and the March 2007 arrest, the convictions that followed, and more importantly, the employment consequences therefrom, may leave a glaring hole in the jury's understanding of the full picture of what transpired between plaintiff and Smith.

As an indication of the utter lack of cooperation between counsel here, in their Joint Trial Memorandum, the parties have stipulated to only two facts: (1) that plaintiff was an employee in DISP as a permanent Program Aide from January 2002 through March 20, 2008; and (2) that plaintiff had known Smith since 1986. (Dkt. #151, at 1). Counsel would do well to work professionally with one another and attempt to prepare additional Stipulations of Facts, which can fill in some of the gaps for the jury, in a straight-forward manner that is not prejudicial to either side.

plaintiff's termination.

### 2.  DEFENDANT'S MOTION IN LIMINE RE: SEXUAL HISTORY, ORIENTATION OR PREDISPOSITION OF NON-PARTIES (DKT. #143)

In this motion, defendant moves to prohibit any documentary or testimonial evidence offered to prove that the non-party child victim engaged in sexual behavior with others (Dkt. #143, at 1, 3), or offered to prove any non-party sexual's orientation, predisposition or sexual history (id. at 1, 3-4).  In light of the conclusion reached in Section I.C.1 supra, there is no need to discuss Mary Smith, who is addressed in most of plaintiff's brief in opposition (Dkt. #162, at 1, 2-4), as no evidence will be admitted as to her.

Regarding Smith's sexual orientation, plaintiff argues that "such evidence will only be necessary if defendant disputes that the sexual harassment was 'because of sex[,'] and evidence of similar acts by . . . Smith would be admissible to show a pattern of harassing behavior."  (Id. at 1).  However, in his brief, plaintiff represents that he "does not anticipate having to offer evidence of . . . Smith's sexual orientation [nor does he anticipate having to offer evidence that] . . . he engaged in similar behavior against at least one other individual in the workplace. . . ."  (Id. at 1-2).

Accordingly, defendant's Motion In Limine re: Sexual History, Orientation or Predisposition of Non-Parties (Dkt. #143) is denied without prejudice as moot with respect to Mary Smith and is denied without prejudice to renew, if necessary, with respect to John Smith.

### 3.  DEFENDANT'S MOTION RE: PREPARATION FOR TRIAL TESTIMONY OF PLAINTIFF'S STATE OF CONNECTICUT JUDICIAL BRANCH ADULT PROBATION OFFICER (DKT. #120)

In this motion, defendant requests the Court's permission to show documents that are part of the Court's public file from its Motion for Summary Judgment to plaintiff's Adult

Probation Officer.  (Dkt. #120, at 1-4).  In light of the conclusion reached in Section I.C.1 <u>supra</u>, this motion has become moot.

Accordingly, Defendant's Motion re: Preparation for Trial Testimony of Plaintiff's State of Connecticut Judicial Branch Adult Probation Officer (Dkt. #120) is <u>denied without prejudice as moot</u>.

<u>4.  DEFENDANT'S MOTION FOR PROTECTIVE ORDER (DKT. #122)</u>

In this motion, defendant seeks a protective order to protect from disclosure of confidential health information, including psychiatric records information, of Mary Smith, and a further order to plaintiff's counsel not to disseminate these records to anyone nor share the contents of these records, and destroy any records that she possesses without an authorization by Mary Smith.  (Dkt. #122, at 1, 2; Brief at 1, 2-4).  In his five-paragraph brief in opposition, plaintiff argues that defense counsel has no standing to request a protective order on behalf of someone that they do not represent, defense counsel made no attempt to resolve this issue first, defense counsel has no personal knowledge as to whether plaintiff's counsel had authorization to possess the document, and denies other comments made in defendant's brief.  (Dkt. #138, at 1-2).

Plaintiff is correct that counsel for UConn does not have standing to request a protective order on behalf of the now-adult child of its former employee when the records at issue have no bearing upon the employee's work for defendant.  <u>See, e.g., Pleasant Gardens Realty Corp. v. H. Kohnstamm & Co., Inc.</u>, No. 08-5582(JHR/JS), 2009 WL 2982632, at *1, 2-5 (D.N.J. Sept. 10, 2009)(the U.S. has standing to challenge deposition subpoenas directed to former employees of the EPA because the requesting party was seeking to discover "official information" that belonged to the U.S. Government, some of which could be privileged or otherwise protected from discovery); <u>Sparks v. Seltzer</u>, No. 05-CV-

2082(NG)(KAM), 2006 WL 2358157, at *1-4 (E.D.N.Y. Aug. 14, 2006)(Mental Hygiene Legal Service had standing to object to subpoena directed to an attorney who had left their employ, which subpoena sought information gained through the attorney's employment there and that was subject to a confidentiality agreement).    However, given the extremely sensitive nature of these documents, plaintiff's counsel is urged not to disseminate or share these documents, or the contexts thereof, with any other person.[40]

Defendant's Motion for Protective Order (Dkt. #122) is <u>denied</u>.

### D.    DEFENDANT'S MOTION IN LIMINE RE: PLAINTIFF'S CONTINUED USE OF FICTITIOUS NAME (DKT. #140)

In this motion, defendant moves to prohibit plaintiff from the continued use of the pseudonym, John Doe, in this case because plaintiff, under his true name, previously has publicly filed documents regarding the same allegations of sexual harassment as alleged in this case, and already is publicly known as a registered sex offender.  (Dkt. #140, at 1).[41] Defendant argues that having plaintiff proceed under a fictitious name presents "myriad [of] issues including jury selection, trial exhibits, witness preparation and testimony, and even how he is to be addressed in open court." (<u>Id</u> at 2-3).  Defendants further point out that plaintiff's name, description, address, picture and conviction appear on the State of Connecticut Sex Offender Registry, which is freely available to the public, and then at the time of his arrest, his name and address appeared in the newspaper (<u>id.</u> at 3, 6 & Exh. A);

---

[40]This set of briefs is yet another example of counsel's desperate need to improve their communications with one another, in that counsel vehemently disagree with one another as to the nature of their discussions about this topic.

[41]Defendant complains that plaintiff's <u>ex parte</u> motion was filed and signed months prior to service on defendants (Dkts. ##4-5, 7), so that defendant did not have an opportunity to be heard on plaintiff proceeding under a fictitious name.  (<u>Id.</u> at 1).  Such motions usually are filed simultaneously with the complaint, and defendant has had ample opportunity at any time subsequent to service in October 2009 to file this motion.

that in October 2006, plaintiff filed a complaint with CHRO in his own name, raising the same claims that closely parallel those here (id. at 3, 7 & Exh. B); and that on August 17, 2007, plaintiff filed a lawsuit against the Department of Children and Families in the Connecticut Superior Court in New Britain, in his own name, which complaint included his claims of sexual harassment and retaliation by virtue of the sexual abuse charges.  (Id. at 3-4, 6-7 & Exh. C).

In his brief in opposition (Dkt. #161, at 1), plaintiff incorporates by reference the brief he previously filed on July 7, 2009.  (Dkt. #4).  Plaintiff asserts that defendant's "only motive" in this motion "is to intimidate and humiliate . . . plaintiff." (Dkt. #161, at 2). Plaintiff further argues that due to the nature of the claims here, plaintiff's supervisor is referred to as John Smith, the CHRO proceedings were not public, the complaint against DCF "made only passing reference" to the allegations of sexual harassment, and there are no allegations in this case regarding plaintiff's criminal conviction or sex offender status.  (Id. at 1-2).  Plaintiff acknowledges that "there may be the need at trial to identify . . . plaintiff by his real name to potential jurors," but this "can be dealt with appropriately at [that] time." (Id. at 2).

The parties agree that the seminal decision on this issue is Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185 (2d Cir. 2008), a pro se action where, like here, the plaintiff alleged, inter alia, physical and sexual assaults against state and municipal entities and officers.  Id. at 187.   As observed by Court of Appeals Judge José A. Cabranes, FED. R. CIV. P.  10(a), which requires "[t]he titles of the complaint must name all the parties[,]" while "seemingly pedestrian, serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly[,]" because the public has "a right to know who is using their courts."  Id. at 188-89 (internal quotations & citation omitted). Nonetheless, courts have "carved out a limited number of exceptions to the general

requirement of disclosure of the names of parties, which permit plaintiffs to proceed anonymously." Id. at 189 (internal quotations, alterations & citation omitted).  The Second Circuit has approved the following list of ten factors to be used "as a balancing test that weighs the plaintiff's need for anonymity against counterveiling interests in full disclosure[]":

> (1) whether the litigation involves matter that are highly sensitive and of a personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been keep confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

Id. at 189, 190 (internal quotations, alterations & multiple citations omitted).   Judge Cabranes "caution[ed,]" however, that "this list is non-exhaustive and district courts should take into account other factors relevant to the particular case under consideration . . . ." Id. at 189-90.

The Sealed Plaintiff decision was addressed in detail the next year in Doe v. Greiner, 662 F. Supp. 2d 355 (S.D.N.Y. 2009), where an inmate's request to file his habeas petition anonymously was denied, in that plaintiff had been tried in state court at which he testified, had taken an appeal to the New York Appellate Division and New York Court of Appeals, and had filed a federal habeas petition, all in his own name.  Id. at 356-57.  At that time, his defense was that his actions all stemmed from his work as a confidential informant for the

federal government, id. at 356, which obviously had been rejected by the jury in convicting him.  Some eleven years after his conviction and four years after his first federal habeas had been dismissed, he filed his second federal habeas, this time requesting to proceed under a fictitious name because he had acted as an informant.  Id. at 356-59.  Relying upon the ten factors listed in Sealed Plaintiff, the District Judge held that plaintiff's filings did not "involve matters that are highly sensitive or that implicate issues of privacy[,]" particularly since "this petition for a writ of habeas corpus cannot be distinguished from the thousands of others that are litigated on the public record."  Id. at 360-61.  Moreover, given all the state filings and rulings, plaintiff's identification had not been kept confidential, including his own interjection of his informant status during his state prosecution.  Id. at 361-63.  Thus, plaintiff's motion to proceed anonymously was denied.  Id. at 364.

The opposite conclusion was reached one year later by Judge Hall in Doe v. Town of Madison, No. 3:09 CV 2005 (JCH), 2010 WL 1330411 (D. Conn. Mar. 31, 2010), a case which is more similar to this one.  There, plaintiff was a minor residing at a therapeutic boarding school for children with emotional and psychiatric disorders when he was arrested for assault, as a result of a altercation between him and a staff member; the charges ultimately were nolled.  Id. at *1.  Despite the statutory requirement that Youthful Offender charges remain confidential under CONN. GEN. STAT. § 54-76l, plaintiff's name, date of arrest, and criminal charges appeared on the Town's "Arrest Log," which information remained on the Town's website for thirteen months.  Id.  Plaintiff's motion to use a pseudonym had been granted in state court, and upon removal to federal court, plaintiff sought continued use of the pseudonym, which was opposed by defendants.  Id.   Judge Hall granted plaintiff's motion, relying upon the factors in Sealed Plaintiff, rejecting, inter alia, defendant's argument that the information had been publicly available for a significant period of time, especially

since "[t]he crux of plaintiff's claim is that his identity was unlawfully released to the public in violation of the Youthful Offender Statute's requirements." Id. at *2-3 (citation omitted).

In this case, in analyzing the ten factors presented in Sealed Plaintiff, there can be no doubt that allegations made here involve matters that are "highly sensitive and of a personal nature[]"; in fact, it is difficult to conceive of allegations that can be more sensitive or personal. Given plaintiff's history of emotional disorders, for which he has received Social Security benefits, public identification of him can present the harm of further emotional upset, and for the same reasons, plaintiff is particularly vulnerable to the possible harms of disclosure. There is no apparent prejudice to defendant by allowing plaintiff to press his claims anonymously, other than the inconvenience and awkwardness with which the Court and both counsel must proceed at jury selection and throughout the trial; however, this inconvenience and awkwardness flows in both directions, in that plaintiff's supervisor will be referred to as Mr. Smith.

For purposes of this litigation, plaintiff's identify has thus far been kept confidential. A review of the public web page for the Connecticut Judicial Branch does not include plaintiff's lawsuit against DCF, for which he included his own name in his pro se complaint (Dkt. #145, Exh. C), but his name, docket number and summary page do appear on the web site for his two criminal convictions. And defendant is correct that plaintiff does appear on the State of Connecticut Sex Offender Registry, readily available on line (Dkt. #145, Exh. A), which includes detailed information about plaintiff, including his name, date of birth, height and weight, photograph, address, and specific information regarding his conviction. However, given the conclusion reached in Section I.C.1 supra, the two prosecutions will not be part of this trial, so that there is no way for the public information regarding plaintiff from his convictions to be linked to him in this lawsuit. As a result, the procedural background of

this case is far closer to the facts in the <u>Doe v. Town of Madison</u> case than to those in the <u>Doe v. Greiner</u> case.

Similarly, it does not appear that the public's interest in the litigation is furthered by requiring <u>plaintiff</u> to disclose his identity, and with the departure of both plaintiff and Smith from UConn more than five years ago, there is also "an atypically weak public interest in knowing the litigants' identities."  <u>Sealed Plaintiff</u>, 537 F.3d at 190.  The Court cannot ascertain, nor have counsel suggested, any alternative mechanism for protecting the confidentiality of the plaintiff.

Of the ten factors, the only two that militate against non-disclosure is that there is absence of any additional retaliatory physical or mental harm to plaintiff, now that he has severed his ties with UConn and has significant constraints around him from his second conviction, as well as the fact that the lawsuit is challenging the actions of a state university, in which the public should have greater interest.  However, these two factors cannot overcome the significant weight of the eight other factors.

Therefore, defendant's Motion <u>In Limine</u> re: Plaintiff's Continued Use of Fictitious Name (Dkt. #140) is <u>denied</u>.[42]

### E. TWO MOTIONS REGARDING EXPERT TESTIMONY -- DEFENDANT'S MOTION IN LIMINE RE: PLAINTIFF'S EXPERT WITNESS (Dkt. #130) AND DEFENDANT'S SUPPLEMENTAL MOTION IN LIMINE RE: RECORDS OF DAVID BONNANO, PSY.D (DKT. #133)

In defendant's first motion, defendant moves to prohibit plaintiff from mentioning or offering any testimonial or documentary evidence from any expert witness not disclosed in

---

[42]Prior to the final pretrial conference, the Magistrate Judge will require counsel to research and submit filings about the logistics required when the two primary witnesses in this case are proceeding under pseudonyms.

plaintiff's filing of expert witnesses, dated March 24, 2011, which lists only one expert witness, David Bonanno, Psy.D.  (Dkt. #130, at 1, 4-5 & Exh. A).   Defendant also seeks to prohibit plaintiff from offering any records relating to treatment after May 8, 2006, as plaintiff has represented that he is only claiming emotional damages through his last day of work with Smith on May 8, 2006, as well as any unsworn records; as Dr. Bonnano's reports commence on September 27, 2008 and end on October 5, 2010, defendant thus maintains that they are outside the period of time for which plaintiff is seeking damages for emotional distress.   (Id. at 1-2, 4-5 & Exhs. C-D; Dkts. ##136-37).   Defendant further moves to prohibit plaintiff from offering any testimonial or documentary evidence from Dr. Bonanno regarding any treatment of plaintiff prior to June 2008, as Dr. Bonanno was not licensed in Connecticut until May 9, 2008.  (Dkt. #130, at 2 & Exh. A).  Lastly, defendant argues that Dr. Bonanno is not entitled to testify as to any expert opinion because plaintiff specifically indicated that there were "no opinions rendered[,]" and he has failed to provide an expert report under FED. R. CIV. P.  26(a)(2)(B), so that his testimony should be precluded.  (Id. at 4-5, 5-8 & Exh. C).

  In its second motion, defendant moved to prohibit plaintiff from mentioning or offering any testimonial or documentary evidence with respect to any updated records from Dr. Bonnano, of which defense counsel learned for the first time in April 2013 in response to its first motion.  (Dkt. #133, at 1-5 & Exhs. A-B).

  In his brief in opposition, plaintiff argues that because Dr. Bonanno is a "treating physician," plaintiff is not obligated to provide an expert report under Rule 26(a)(2)(B).  (Dkt. #146, at 1-2, citing Day v. Consolidated Rail Corp., No. 95 CIV 968 (PKL), 1996 WL 257654, at *2 (S.D.N.Y. May 15, 1996)).   However, plaintiff has represented that he "does not intend to call [Dr. Bonanno] unless the evidence regarding [plaintiff's] arrest and plea under the

Alford doctrine is admitted into evidence plaintiff's objection."  (Id. at 1).[43]

Because of the conclusion reached in Section I.C.1 supra, defendant's motions with respect to Dr. Bonanno have become moot.  Thus, defendant's Motion In Limine re: Plaintiff's Expert Witness (Dkt. #130) and defendant's Supplemental Motion In Limine re: Records of David Bonnano, Psy.D (Dkt. #133) are both denied without prejudice as moot.

## II. CONCLUSION

Accordingly, for the reasons stated above,

Defendant's Motion re: Preparation for Trial Testimony of Plaintiff's State of Connecticut Judicial Branch Adult Probation Officer (Dkt. #120) is denied without prejudice as moot;

Defendant's Motion for Protective Order (Dkt. #122) is denied;

Defendant's Motion In Limine re: Plaintiff's Expert Witness (Dkt. #130) is denied without prejudice as moot;

Defendant's Supplemental Motion In Limine re: Records of David Bonnano, Psy.D (Dkt. #133) is denied without prejudice as moot;

Defendant's Motion In Limine re: Unproved Allegations and Claims (Dkt. #135) is denied in large part to the extent set forth in Section I.A.3;

Defendant's Motion In Limine re: Plaintiff's Continued Use of Fictitious Name (Dkt.

---

[43]There is a sentence in plaintiff's final argument of his brief that is disconcerting to the Court – that plaintiff "has not 'abandoned his [retaliation] claims . . . because his retaliation claim is still subject to appeal."  (Dkt. #146, at 2).

As has been set forth several times in this ruling, plaintiff has withdrawn his claim of retaliation with respect to the March 2007 arrest, and he has represented on numerous occasions that he is not seeking damages as a result of his May 2006 arrest.  Thus, despite Judge Eginton having dismissed the retaliation claims (which may be capable of appeal at an appropriate time in the future), plaintiff also has chosen not to pursue his claims for retaliation.  See also notes 33, 35 supra.

#140) is <u>denied</u>;

Defendant's Motion <u>In Limine</u> re: Acts for Which Plaintiff Has Failed to Exhaust his Administrative Remedies (Dkt. #142) is <u>denied in large part to the extent set forth in Section I.A.2.</u>;

Defendant's Motion <u>In Limine</u> re: Sexual History, Orientation or Predisposition of Non-Parties (Dkt. #143) is <u>denied without prejudice as moot with respect to Mary Smith and is denied without prejudice to renew, if necessary, with respect to John Smith</u>;

Defendant's Motion <u>In Limine</u> re: <u>Quid Pro Quo</u> Theory of Liability (Dkt. #148) is <u>denied</u>;

Plaintiff's Motion <u>In Limine</u> to Exclude Evidence of Plaintiff's Arrests and <u>Alford</u> Plea, (Dkt. #149) is <u>granted</u>;

Plaintiff's Motion <u>In Limine</u> to Exclude Testimony Refuting the Findings of the Office of Diversity and Equity Report (Dkt. #150) is <u>denied</u>;

Plaintiff's Motion <u>In Limine</u> to Exclude CHRO Dismissal (Dkt. #152) is <u>granted</u>; and

Plaintiff's Motion <u>In Limine</u> to Exclude Testimony Regarding Termination of Employment or Social Security Disability Benefits (Dkt. #153) is <u>granted with respect to plaintiff's termination but is denied with respect to Social Security Disability Benefits</u>.[44]

---

[44]U.S. Magistrate Judge William I. Garfinkel, who is a nationally recognized expert in mediation of cases of this type, has generously offered to hold a settlement conference in this case.  **Counsel are instructed to call Judge Garfinkel's Chambers to schedule a settlement conference before him**.  Once counsel have secured a firm date to meet with Judge Garfinkel, they should contact this Magistrate Judge's Chambers to schedule a telephone conference to set dates for the completion of briefs on the remaining evidentiary and procedural issues, <u>see</u> Sections I.A.3 and I.D. <u>supra</u>, for a final pretrial conference, and for jury selection and trial.

Dated at New Haven, Connecticut, this 22nd day of August, 2013.


/s/ Joan G. Margolis, USMJ
Joan Glazer Margolis
United States Magistrate Judge